1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    DESERT SURVIVORS, et al.,                 Case No.  16-cv-01165-JCS

8              Plaintiffs,

9         v.                                   **ORDER DENYING DEFENDANTS'
                                               MOTION TO TRANSFER VENUE**
10   US DEPARTMENT OF THE INTERIOR, et         Re: Dkt. No. 12
     al.,
11
              Defendants.

12

## I.      INTRODUCTION

Plaintiffs Desert Survivors, Center for Biological Diversity, WildEarth Guardians, and
Western Watersheds Project (collectively "Plaintiffs") brought the instant action seeking to protect
the Bi-State Sage-Grouse ("BSSG"), a large bird found on the border between California and
Nevada.  In the Complaint, Plaintiffs allege that Defendants Department of Interior of the United
States and United States Fish and Wildlife Service ("Service") (collectively "Defendants")
improperly withdrew a proposed rule (the "Withdrawal") that the BSSG be listed as a threatened
species under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1534, and seek an order
directing the Service to reconsider listing the BSSG as threatened under the ESA.

Presently before the Court is Defendants' Motion to Transfer Venue ("Motion").  In the
Motion, Defendants ask the Court to transfer venue from the Northern District of California to the
Eastern District of California.  A hearing on the motion was held at 9:30 a.m. on July 15, 2016.
For the reasons stated below, the Motion is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all
purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.     BACKGROUND

### A.     Factual Background

Sage-grouse are large birds known for their elaborate mating ritual that live in sagebrush habitats.  Complaint for Declaratory and Injunctive Relief ("Compl.," dkt. 1) ¶ 38.  The Bi-State Sage-Grouse is a distinct population of greater sage-grouse species that live in the "far southwestern reach of the greater sage-grouse's range" in the central border region of eastern California and western Nevada.  *Id.* ¶ 40 (citing 80 Fed. Reg. 22,828, 22829).  The BSSG has suffered from habitat and population loss for many years.  *Id.* ¶ 45 (citing 80 Fed. Reg. at 22,831).  The BSSG's "small population size and isolation, coupled with stressors caused by human activities, threaten the population's long-term survival." Compl. ¶ 43 (citing U.S. Fish and Wildlife Service, Species Status Assessment: Bi-State Distinct Population Segment of Greater Sage-Grouse at 6 (Mar. 1, 2015)).

### B.     Related Litigation and Agency Action

Environmental groups have been advocating and petitioning the Service for the protection of the BSSG for more than a decade.

In 2002, the Institute for Wildlife Protection petitioned the Service to emergency list sage grouse found in the Mono County, California and Lyon Count, Nevada (the animals who later became known as the BSSG) as an endangered distinct population segment of the greater sage-grouse.  *See* Compl. ¶ 49; 71 Fed. Reg. 76,058.  Later that year, the Service found that the petition lacked "substantial scientific or commercial information" that the listing was not warranted based on the lack of information about whether these sage-grouse were a distinct population segment and whether they were faced with extinction.  71 Fed. Reg. at 76,058–59.  Entities must be a distinct population segment in order to be listed under the ESA.  *Id.*  In November 2005, the petitioners filed suit in the Western District of Washington challenging the Service's finding that listing was not warranted.  *Id.*

Also in November 2005, a set of environmental groups petitioned the Service to list the BSSG as threatened or endangered.  *See* Compl. ¶ 49; 71 Fed. Reg. at 76,059.  The petitioning groups were the Center for Biological Diversity (CBD), the Western Watersheds Project, the

United States District Court
Northern District of California

2

United States District Court
Northern District of California

Sagebrush Sea Campaign, and Christians Caring for Conservation.[2]  71 Fed. Reg. at 76,059.  In March 2006, the Service responded to the petition with a letter indicating that it reviewed the petition and the listing was not necessary.  *Id.*  The Service further informed the petitioners that because of "court orders and settlement agreements for other listing and critical habitat actions" the Service was unable to further address the petition.  *Id.*  In April 2006, the petitioning environmental groups sent the Service a notice of their "intent to sue the Service for violating the Act's requirement to make a petition finding within 12 months after receiving a petition."  *Id.*

The Service settled both of these matters in an April 2006 settlement agreement where the Service agreed to evaluate the November 2005 petition, re-evaluate the 2002 petition, and publish a finding on the petitions in December 2006.  *Id.*  The Service did so and found that the petitions "did not provide sufficient information to show that the population may warrant listing."  Compl. ¶ 49 (citing 71 Fed. Reg. 76,058).

In 2007, the CBD, the Sagebrush Sea Campaign, Western Watersheds Project, and Desert Survivors brought an action in this Court challenging the Service's 2006 finding.  *See* Compl. ¶ 49 (citing *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, Case 3:07-cv-04347(JCS) (N.D. Cal.), dkt. 25)).  The parties reached a settlement in 2008 when the Service agreed to review the petition again and "found that the [BSSG] could warrant listing, and issued multiple findings on species' status."  *Id.* (citing 78 Fed. Reg. 64,358, 64,360).  This settlement resulted in a May 2010 finding by the Service that the BSSG was suitable for listing under the ESA but its listing was "precluded by higher listing priorities."  *Id.* ¶ 50 (citing 78 Fed. Reg. at 64,360).

In a 2011 settlement in a consolidated case with WildEarth Guardians and other groups in the District of Columbia, the Service agreed to publish proposed rules for protection or findings that protection was not warranted for the 251 species that were candidates for protection under the ESA in 2010.  78 Fed. Reg. at 64,361.

As a direct result of that settlement agreement and developing from prior petitions to

---

[2] The Sagebrush Sea Campaign was later absorbed into WildEarth Guardians, a plaintiff in the instant action.  Cotton Decl. at 2–3.

protect the BSSG, in October 2013 the Service issued a Proposed Rule to list the BSSG as threatened under the ESA.  *See* Compl. ¶ 52; 78 Fed. Reg. at 64,361.  In conjunction with the Proposed Rule, the Service proposed designating 1.8 million acres of land as critical habitat for the BSSG.  *Id.* (citing 78 Fed. Reg. at 64,328).

In April 2015, the Service withdrew the proposed rule to list the BSSG on the basis that ongoing conservation efforts had reduced the threats to the BSSG.  Compl. ¶ 59 (citing 80 Fed. Reg. 22,828).

### C.      The Complaint

In response to the withdrawal of the proposed rule, Plaintiffs initiated this action in the Northern District of California alleging that the Service (1) "failed to properly apply the ESA's listing factors, failed to adhere to the best available science, and failed to adequately explain why it withdrew the proposed rule;" (2) "violated the ESA in adopting [and misapplying] the Significant Portion of its Range Policy;" and (3) "violated the ESA by misapplying the Service's Policy on the Evaluation of Conservation Efforts (PECE Policy)."  Compl. ¶¶ 80, 83–84, 87 (internal citations and quotation marks omitted).

Claim One is brought under the ESA and the Administrative Procedure Act ("APA") § 706(2)(A) based on the theory that the Withdrawal was "arbitrary [and] capricious" because the Service failed to adhere to the best available science, improperly defined the foreseeable future, improperly interpreted population models, concluded that existing regulations adequately protect the BSSG on federal land, concluded that existing regulations will sufficiently conserve the BSSG, and failed to adhere to the best available science regarding threats to the BSSG.  Compl. ¶ 80(a)–(f).

Claim Two is brought under the ESA and APA § 706(2)(A), alleging that the Service's adoption of the Significant Portion of its Range Policy (SPOR) is arbitrary and capricious.  Compl. ¶ 85.  The Service is required to list to a species "if it is endangered or threatened throughout 'all or a significant portion of its range.'"  Compl. ¶ 20 (citing 16 U.S.C. §§ 1532(6), 1532(20), 1532(a)–(b)).  SPOR interprets the phrase "significant portion of its range" and provides that an entire species will be listed if it is found to be threatened or endangered in a significant portion of

4

its range.  It also requires that a distinct population segment be listed when it is threatened or endangered within its range.  A portion of a range is significant when the portion's "contribution to the viability of the species is so important that, without the members in that portion, the species would be in danger of extinction, or likely to become so in the foreseeable future, throughout all of its range."  Compl. ¶ 23 (citing 79 Fed. Reg. 37578).  Plaintiffs claim that SPOR is arbitrary and capricious because it does not consider the geographic area the species historically inhabited, renders portions of the definitions of "endangered species" and "threatened species" superfluous, and "sets such a high threshold" to invoke SPOR that it cannot protect species that are not otherwise eligible for listing.  *Id.* ¶ 83.

Claim Three is also brought under the EPA and APA § 706(2)(A) based on the theory that the Service's application of the PECE Policy to the BSSG was arbitrary and capricious.  *Id.* ¶ 89. The PECE Policy "establishes criteria to be applied by the Service in evaluating whether identified, but not yet implemented, conservation efforts can be considered as part of a listing decision."  *Id.* ¶ 30.  The policy considers the certainty of the implementation and the certainty of effectiveness.  Plaintiffs claim that the Service misapplied the nine criteria laid out in the PECE Policy to assess the certainty of the implementation of BSSG conservation efforts.  *Id.* ¶ 87. Plaintiffs also claim that the Service misapplied the six criteria provided by the PECE Policy for evaluating the certainty of effectiveness of BSSG conservation efforts.  *Id.* ¶ 88.

### D.     The Parties

Plaintiffs are four environmental organizations with tens of thousands of members nationwide.  Plaintiff Desert Survivors is an "affiliation of desert lovers" who are "committed to experiencing, sharing, and protecting desert wilderness."  Decl. of Gerald Goss (Dkt. 16-1) at 2. Desert Survivors is headquartered in Oakland and has nearly 400 members in the Northern District of California.  *Id.*  Members of Desert Survivors have visited the habitat of the BSSG and intend to do so in the future.  *Id.* at 3.

Plaintiff Center for Biological Diversity ("CBD") is a non-profit corporation incorporated in California.  Decl. of Roman Czebiniak (Dkt. 16-2) at 2.  CBD maintains an office in Oakland which "acts as a hub for much the legal and programmatic work at CBD" as well as offices in

1   Humboldt and Marin Counties.  *Id.* at 3; Decl. of Peter Galvin (Dkt. 16-3) at 2.  CBD has nearly

2   48,000 members nationwide and more than 5,000 members who live in the Northern District of

3   California.  Czebiniak Decl. at 3.

4          Plaintiff Western Watersheds Project is a conservation organization headquartered in

5   Idaho.  Decl. of Michael Connor (Dkt. 16-4) at 2. It maintains a field office in California.  *Id.*

6   Western Watersheds Project has over 1,400 members, 75 of whom live in the Northern District.

7   *Id.*

8           Plaintiff WildEarth Guardians is a non-profit organization that works to "protect and

9   restore the wildlife, wild places, wild rivers, and health of the American West."  Decl. of Bethany

10  Cotton (Dkt. 16-5) at 2.  It maintains an office in San Francisco and has more than 4,000 members

11  who live in the Northern District.  *Id.*

12         Defendants are the United States Department of the Interior and the United States Fish and

13  Wildlife Service.  The Service holds the "primary authority for the day-to-day administration of

14  the ESA with respect to terrestrial species."  Compl. ¶ 16.  The challenged rulemaking occurred in

15  the Service's Pacific Southwest Regional Office in Sacramento and the Reno, Nevada Fish and

16  Wildlife Office.  *See* Compl. ¶ 59 (citing 80 Fed. Reg. 22,828, 22,866).

17         **E.     The Motion**

18         In the Motion, Defendants ask the Court to transfer this action to the Eastern District of

19  California pursuant to 28 U.S.C. § 1404(a).  Defendants contend that both of the requirements for

20  transfer under § 1404(a) are met because: (1) venue is proper in the Eastern District; and (2)

21  transfer is for the "convenience of the parties and in the interests of justice."  28 U.S.C. § 1404(a).

22  In support of their assertion that venue is proper in the Eastern District of California, Defendants

23  cite the fact that the BSSG "inhabits portions of the Eastern District of California (whereas it

24  inhabits no portions of the Northern District of California), and most of the challenged rulemaking

25  occurred in the Eastern District of California (whereas no rulemaking occurred in the Northern

26  District of California)."  Mot. at 6.

27         Second, Defendants argue that the "convenience factors" that courts typically use to

28  determine if transfer would be for the "convenience of the parties and in the interest of justice"

United States District Court
Northern District of California

United States District Court
Northern District of California

1    mandate transfer to the Eastern District. *Id.* at 4–6. The "convenience factors" include: (1) a

2    plaintiff's choice of forum, (2) convenience of the parties and witnesses, (3) ease of access to

3    sources of proof, (4) local interest in the controversy, (5) familiarity of each forum with the

4    applicable law, and (6) relative congestion in each forum. *Id.* at 4 (citing *Ctr. For Food Safety v.*

5    *Vilsack*, No. 11-cv-00831, 2011 WL 996343 (N.D. Cal. Mar. 17, 2011)).

6         Defendants claim that factors three, five, and six—ease of access to evidence and

7    witnesses, court congestion, and the forums' familiarity with the law—are neutral in this case. *Id.*

8    at 14. First, Defendants note that the Plaintiffs' "claims are likely to be resolved through

9    dispositive briefing" and thus it is unlikely that witnesses or "extra-record fact finding" will be

10   required. *Id.* at 15. Second, Defendants contend there is little difference in the congestion of the

11   two forums; the average time to resolution is less than one month faster in the Northern District.

12   *Id.* at 16 (citing The Administrative Office of the United States Courts, <u>U.S. District Courts–</u>

13   <u>Combined Civil and Criminal Federal Court Management Statistics</u>, United States Courts (June

14   30, 2015), http://www.uscourts.gov/statistics/table/na/federal-court-management-

15   statistics/2015/06/31-1). Third, since the issue is one of federal law, both forums are presumed to

16   be equally familiar with the applicable statutes. *Id.* at 14.

17        Regarding the first factor, the Plaintiffs' choice of forum, Defendants assert it is due

18   "minimal deference" as only one of the Plaintiff organizations resides in the Northern District of

19   California and none of the operative facts occurred in this District. *Id.* Defendants claim that all

20   of the operative facts occurred in the Eastern District as it "is the location of the [BSSG], the

21   challenged agency rulemaking, and the localized impacts therefrom." *Id.* at 8. Defendants further

22   claim that the Northern District has "no particular interest in either the parties or the subject

23   matter." *Id.* at 9. They argue that "if a 'significant connection to the activities alleged' is lacking,

24   then less deference is due '<u>even if</u> the plaintiff is a resident of the forum.'" *Id.* at 10 (citing

25   *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, No. 13-cv-03532 (WHA),

26   2013 WL 6057824 (N.D. Cal. Nov. 15, 2013)). Defendants also assert that Plaintiffs' choice of

27   forum is "less significant" "because 'a majority of the named plaintiffs do not reside in this

28   district.'" *Id.* at 11 (quoting *Le v. Zuffa*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015)).

1    Defendants argue further that there is a "countervailing 'local interest in having localized

2  controversies decided at home.'" *Id.* at 12 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509

3  (1947)).  Defendants claim that "courts in this District routinely grant transfers to the forum that is

4  'most affected' by the case." *Id.* at 13 (citing *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No.

5  CV 12-4407 (SC), 2013 WL 120185 (N.D. Cal. Jan. 8, 2013) ("*ALDF*"); *Earth Island Instit. v.*

6  *Quinn*, 56 F. Supp. 3d 1110 (N.D. Cal. 2014); *Ctr. for Biological Diversity v. Rural Utils. Serv.*,

7  No. C-08-1240 (MMC), 2008 WL 2622868 (N.D. Cal. June 27, 2008); *Ctr. for Biological*

8  *Diversity v. Kempthorne*, No. C-07-0894 (EDL), 2007 WL 20203515 (N.D. Cal. July 12, 2007)

9  ("*Kempthorne I*"); *Trout Unlimited v. Lohn*, No. 06-VS-904 (RSL), 2006 WL 2927737 (W.D.

10  Wash. Oct. 10, 2006)).  Defendants additionally note the Service held two public meetings

11  regarding its rulemaking in the Eastern District, published notice in three newspapers in that

12  district, and received "substantial input . . . from local government entities" in the Eastern District.

13  *Id.* at 12.

14    In their Opposition to the Motion, Plaintiffs argue that the Court should not transfer this

15  action under 28 U.S.C. § 1404(a).  Plaintiffs contend that venue is proper in the Northern District

16  and the transfer would not be "for the convenience of parties" or "in the interest of justice" as the

17  convenience factors weigh in favor of retaining this action in the Northern District of California.

18  *See* Opp'n at 2–3.

19    Plaintiffs first contend that venue is proper in the Northern District of California under §

20  1391(e)(1), which provides that venue is proper where the plaintiff resides, because one of the

21  plaintiffs, Desert Survivors, is headquartered in Oakland and therefore is a resident of the Northern

22  District.  *Id.* at 2.

23    Plaintiffs then argue that their choice of venue should not be disturbed.  Opp'n at 3.

24  Plaintiffs note that Defendants bear the burden of proving why their selected forum is

25  inappropriate and "must make a strong showing of inconvenience" to do so.  *Id.* at 2 (citing

26  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  They do not

27  contest Defendants' claim that venue would also be proper in the Eastern District, but instead

28  argue that their choice to litigate in the Northern District is due "substantial deference" because

8

they have chosen to litigate at home. *Id.* at 4.  In response to Defendants' contention that their choice of forum is only due minimal deference, Plaintiffs claim that the exception to the "substantial deference" rule requires <u>both</u> that "the operative facts have not occurred within the forum of original selection *and* that forum has no particular interest in the parties or the subject matter." *Id.* at 4 (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)). Plaintiffs assert that the standard is not met because the Northern District has a particular interest in the parties and subject matter based on the fact that Desert Survivors is a resident of the District as are the "thousands of [Plaintiffs'] members, supporters, and staff who live in this District and who rely on Plaintiffs to represent their interests in protecting endangered wildlife and public health." *Id.* at 4–6.

Plaintiffs agree with Defendants that some of the convenience factors are neutral, including: ease of access to evidence and witnesses, each forum's familiarity with the law, and court congestion. *Id.* at 8, 16.

They disagree, however, with Defendants' claim that transfer is warranted because the Eastern District of California has a localized interest in this conflict. *Id.* at 9.  Plaintiffs argue that "citizens of other regions and other states have an interest in ensuring the survival of threatened and endangered species, wherever those species may exist" and that Defendants are "ignoring the larger regional and national interests implicated by this action." *Id.*  Plaintiffs claim that "[w]hile individuals in other areas may also have interests in the species and habitats at issue, the courts should not overlook the interests of individuals in other districts to protecting the environment." *Id.* at 12.

Finally, Plaintiffs argue that transfer to the Eastern District would "substantially inconvenience" them. *Id.* at 14.  Plaintiffs note that convenience considerations may include balancing the costs to the parties and considering "the relative means of the parties." *Id.* (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000); *Bloom v. Express Servs.*, No. C 11-00009 (CRB), 2011 WL 1481402, *6 (N.D. Cal. April 19, 2011)).  Plaintiffs claim that a "major factor" in Plaintiffs' decision to file in the Northern District of California, where their counsel is located, is that "travel costs can accrue to be a substantial drain on [Plaintiffs']

organizational resources." *Id.* at 15.  Plaintiffs Desert Survivors and CBD's "staff and members wish to attend court hearings in this case" and Plaintiffs lack the "substantial resources [the federal government has] for its staff." *Id.*  Plaintiffs conclude that "transfer of this case to another venue would cost Plaintiffs unnecessary time, inconvenience, and expense" whereas "Defendants do not argue that Plaintiffs' choice is inconvenient for Defendants." *Id.* at 1, 15.

In response, Defendants assert that Plaintiffs' claims of inconvenience are unconvincing. Reply Memorandum in Support of Defendants' Motion to Transfer Venue ("Reply," dkt. 24) at 12.  Defendants assert that because this case is likely to be decided on the record, Plaintiffs' claims of their staff being unable to attend hearings are of little significance. *Id.* at 13–14.  Defendants also claim that Plaintiffs' argument that transfer to the Eastern District would substantially increase Plaintiffs' costs is "completely conclusory" absent Plaintiffs' estimate of what those costs are likely to be. *Id.*  Further, Defendants claim that Plaintiffs "cannot reasonably claim to be inconvenienced by the transfer" in light of Plaintiffs' "specific connections" to the Eastern District and frequent litigation there. *Id.* at 14–15.

## III.    ANALYSIS

### A.  Legal Standard

In order to determine if a transfer of venue is appropriate under § 1404(a) courts apply a two-part test. *Ctr. for Biological Diversity v. McCarthy*, No. 14-CV-05138 (WHO), 2015 WL 1535594, at *1 (N.D. Cal. Apr. 6, 2015) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985)).  First, courts consider whether the case could have been brought in the proposed transferee district. *Id.*  Second, if the case could have been brought in the transferee district, courts determine if the case should be moved to that forum "for convenience of parties and witnesses [and] in the interest of justice." *Id.*; 28 U.S.C. § 1404(a).  Courts in this District typically consider eight factors when weighing the convenience of transfer (the "convenience factors"): (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion in each forum. *Id.*

**B.      Venue Would Be Proper in the Eastern District of California**

Under § 1391(e)(1), when a United States agency is a defendant in an action venue is proper where (1) "a defendant in the action resides," (2) "a substantial part of the events or omissions giving rise the claim occurred," or (3) "the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).  In similar environmental protection cases, courts have found that a "substantial part" of the events giving rise to a claim could be found where the protected species is located or where past litigation and agency action relating to the issue occurred.  *See Otter v. Salazar*, 718 F. Supp. 2d 62, 63 (D.D.C. 2010) (granting transfer of action relating to listing of slickspot peppergrass as a threatened species under the ESA to the District of Idaho because slickspot peppergrass is only found in a limited area in southwestern Idaho and past litigation relating to listing the peppergrass had occurred there even though the final rule to list the peppergrass was issued in the District of Columbia where the action was originally filed); *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 74 (D.D.C. 2013) (granting transfer of action relating to the environmental effects of the *Deepwater Horizon* oil spill from the District of Columbia to the District of Alabama where a prior suit over the lease of the oil rig had been heard and oil spill impacted local species and resources).  A substantial part of the events giving rise to a claim can occur in multiple districts, which, in turn, support venue in more than one place.

Here, venue is proper in both the Eastern District and the Northern Districts of California since substantial parts of the events giving rise to the Plaintiffs' claims occurred in both locations. Past litigation relating to listing the BSSG under the ESA occurred in the Northern District and Defendant's concede that venue in the Northern District is proper.  *See* Compl. ¶ 49; Opp'n at 3. Similarly, Plaintiffs do not contest that venue would be proper in the Eastern District as most of the Service's decisions, including the challenged Withdrawal, were considered and made at the Service's regional office in Sacramento in the Eastern District.  *See* Opp'n at 3; 80 Fed. Reg. 22,828, 22,866. Therefore, this action could have been brought in the proposed transferee district.

**C.      The Convenience Factors**

Of the eight convenience factors that courts typically weigh when determining if transfer is appropriate, the parties have agreed that five of them are neutral or do not apply here.  *See* Mot. at

11

14–15; Opp'n at 8, 16.

### 1.      Factors that are Neutral or Do Not Apply

The five factors that are neutral or do not apply are: convenience of the witnesses, ease of access to evidence, the feasibility of consolidation of other claims, each forum's familiarity with applicable law, and relative court congestion.  First, the parties agree that this case is likely to be decided on the motions without any "extra-record fact finding."  *See* Mot. at 15; Opp'n at 8.  Thus, convenience of the witnesses and ease of access to evidence are irrelevant to the Court's consideration.  Next, neither party asserts that there are claims with which this case should be consolidated.  The parties agree that this case presents a question of federal law with which both the Eastern District and the Northern District are equally familiar, rendering this factor neutral.  *See* Mot. at 14; Opp'n at 8.  The parties also agree that the relative court congestion between the districts is approximately the same and so this factor is neutral.  *See* Mot. at 15; Opp'n at 16.

### 2.      Factors that are Relevant

Three factors remain which are relevant to this Court's analysis: the convenience of the parties, the Plaintiff's choice of forum, and local interest in the controversy.

#### a.      Convenience of the Parties

It is inappropriate to grant a motion to transfer where transfer would not minimize overall inconvenience but simply shift the inconveniences of litigating in a non-preferred forum between the parties.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  When considering the convenience of the parties, courts typically consider the location of the parties relative to the forum and the ease of the parties' participation in the litigation.  *See Alaska Wilderness League v. Jewell*, F. Supp. 3d 112, 120 (D.D.C. 2015).  But "the location of counsel is not an appropriate factor for the Court to consider when deciding a motion to transfer under § 1404(a)."  *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, No. C 12-6325 (SBA), 2013 WL 5273088, at *6 (N.D. Cal. Sept. 17, 2013) ("*Ex-Im Bank*") (citing *Clark v. Sprint Spectrum L.P.*, No. C 10-03625 (SI), 2010 WL 5173872, at *3 (N.D. Cal. 2010); *Bibo v. Federal Express, Inc.*, No. C07-2505 (TEH), 2007 WL 2972948, at *3 (N.D. Cal. 2007)).

The Court finds that the convenience of the parties is a neutral factor in the transfer analysis.  The Court finds both parties' arguments about their staff's ability to attend hearings

12

United States District Court
Northern District of California

1    unpersuasive.  As the parties have agreed, this case is likely to be decided on the administrative

2    record and it is unlikely that any hearings will be held for the parties' staff to attend.  *See* Reply at

3    14.  As the "location of counsel is not an appropriate factor," the Court does not give any weight

4    to Plaintiffs' argument that requiring Plaintiffs' counsel to travel to the Eastern District to attend

5    hearings poses a special inconvenience.  *See Ex-Im Bank*, 2013 WL 5273088, at *6.  Neither party

6    has demonstrated that litigating in the Northern District poses any inconvenience that could be

7    eliminated by transferring the case to the Eastern District.  Therefore, the convenience of the

8    parties is a neutral factor.

9                                          **b.      Plaintiffs' Choice of Forum**

10            The importance of Plaintiffs' choice of forum depends on the degree of deference to which

11   it is entitled.  Typically, "substantial deference" is given to the plaintiff's choice of forum.  *Ctr. for*

12   *Biological Diversity v. McCarthy*, No. 14-CV-05138 (WHO), 2015 WL 1535594, at *3 (N.D. Cal.

13   Apr. 6, 2015).  Under that standard, defendants bear the burden of "mak[ing] a strong showing of

14   inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal*, 805 F.2d at

15   843.  This is especially true where the plaintiff has chosen to bring suit at home.  *Ctr. for*

16   *Biological Diversity v. Lubchenco*, No. C-09-4087 (EDL), 2009 WL 454169, at *4 (N.D. Cal.

17   Nov. 30, 2009).  On the other hand, where "the operative facts have not occurred within the forum

18   of original selection *and* that forum has no particular interest in the parties or the subject matter,

19   the plaintiff's choice is entitled only to minimal consideration."  *Pac. Car & Foundry*, 403 F.2d at

20   954 (emphasis added); *see also Lubchenco*, 2009 WL 454169, at *4 (denying transfer and noting

21   that the usual deference to plaintiff's choice of forum will not be discounted unless both

22   conditions are fulfilled).  Operative facts are those facts that relate to the underlying action giving

23   rise to the instant issue.  *See McCarthy*, 2015 WL 1535594, at *3; *Ctr. for Biological Diversity v.*

24   *Kempthorne*, No. C 08-1339 (CW), 2008 WL 4543043, at *3 (N.D. Cal. Oct. 10, 2008)

25   ("*Kempthorne II*"); *Otter*, 718 F. Supp. 2d at 64.  Operative facts in environmental protection

26   cases are often the location of the protected species or resource, where environmental impacts are

27   felt, where prior agency rulemaking has occurred, and where prior and related litigation has

28   occurred.  *See McCarthy*, 2015 WL 1535594, at *3; *Kempthorne II*, 2008 WL 4543043, at *3;

1    *Otter*, 718 F. Supp. 2d at 64.

2         Defendants fail to satisfy either of the conditions necessary to discount the "substantial

3    deference" given to the plaintiff's choice of forum under *Pacific Car & Foundry*.

4         First, Defendants have not established that none of the operative facts occurred in this

5    District.  Mot. at 7.  It is undisputed that the BSSG is found in the Eastern District of California

6    and that the rulemaking that led to the challenged Withdrawal was also made in the Eastern

7    District.  *Id.* at 8.  These are not the only relevant facts, however.  The place where the legal

8    challenge was developed and related litigation occurred are also relevant operative facts.  *See*

9    *Lubchenco*, 2009 WL 454169.

10        In *Lubchenco*, the CBD (also a plaintiff in the instant action) challenged a National Marine

11   Fisheries Service decision not to list the ribbon seal as a threatened or endangered species under

12   the ESA.  *Lubchenco*, 2009 WL 454169, at *1.  Although the ribbon seal lives in the waters

13   around Alaska and the National Marine Fisheries Service's decision was made in Alaska, the

14   *Lubchenco* court held that "California has a significant connection to the activities in this case

15   because some of the operative events occurred here, in that the petition drafting process that

16   triggered the status review of the ribbon seal and the [challenged decision], occurred in the

17   Northern District of California."  *Id.* at *4.

18        Plaintiffs' and other environmental groups' prior litigation in the Northern District of

19   California is an operative fact that prevents the Court from discounting the substantial deference

20   due to the Plaintiffs' choice of forum.  As in *Lubchenco*, where plaintiffs' actions triggered the

21   challenged decision, here, all four plaintiffs and other environmental groups were involved in a

22   series of lawsuits to protect the BSSG in the Northern District.  *See Lubchenco*, 2009 WL 454169,

23   at *4; 78 Fed. Reg. 64358, 64360–61.  The instant action arises from the 2015 Withdrawal of a

24   2013 Proposed Rule to protect the BSSG.  Compl. ¶ 59 (citing 80 Fed. Reg. 22,828).  The 2013

25   Proposed Rule confirmed a 2010 finding by the Service that the BSSG merited listing under the

26   ESA.  *See* Compl. ¶ 52; 78 Fed. Reg. at 64,361.  That 2010 finding was the direct result of a 2007

27   suit brought by all four Plaintiffs in this Court.  Compl. ¶ 50 (citing 78 Fed. Reg. at 64,360).  Due

28   to prior litigation in the Northern District, indeed in this Court, the Defendants have failed to show

United States District Court
Northern District of California

14

that no operative facts occurred in the Northern District.

Second, Defendants have not demonstrated that the Northern District has "no particular interest in the parties or the subject matter." *Pac. Car & Foundry*, 403 F.2d at 954.  In similar cases involving issues of environmental protection, courts in this district have generally held that even a single plaintiff's residence here gives rise to a "particular interest."  *See Ex-Im Bank*, 2013 WL 5273088, at *5; *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Dep't of Interior*, No. 12-2158 (JSC), 2012 WL 3236163, at *1–2 (N.D. Cal. Aug. 6, 2012); *Lubchenco*, 2009 WL 454169, at *4. In *Ex-Im Bank*, the court found that "the Northern District of California has a particular interest in this action because Plaintiffs are residents of California and each has an office in this district as well as members that reside in this district who are concerned about the potential impacts" of the challenged conduct.  *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, No. C 12-6325 (SBA), 2013 WL 5273088, at *5 (N.D. Cal. Sept. 17, 2013) ("*Ex-Im Bank*").  Similarly, in *Lubchenco*, the court held that "Plaintiff's choice of forum weighs heavily because California has an interest in this litigation involving . . . one of its residents." *Lubchenco*, 2009 WL 454169, at *4.  Finally, in *Pacific Coast*, the Fisherman's Associations challenged the Department of the Interior's approval of water service contracts that would export water from the San Francisco Bay/Sacramento River Delta to the Central Valley on the basis that the water exports would negatively impact wildlife in the Northern District.  *Pac. Coast*, 2012 WL 3236163, at *1–2.  The court found that the plaintiff's choice of forum was entitled to "substantial deference" where "at least one of the plaintiffs, or its members, appears to reside in this District" and the plaintiffs alleged that the challenged contracts would lead to "harm of Plaintiffs' members in this District." *Id.* at *4.

This is precisely why the Northern District has a "particular interest" in the instant matter. As in *Ex-Im Bank*, *Lubchenco*, and *Pacific Coast*, one of the Plaintiffs resides in this district.  *See Ex-Im Bank,* WL 5273088, at *5; *Pac. Coast*, 2012 WL 3236163, at *4; *Lubchenco*, 2009 WL 454169, at *4.  Plaintiff Desert Survivors is headquartered in Oakland.  Goss Decl. at 2.  Like in *Ex-Im Bank*, where each of the other plaintiffs maintained an office in the Northern District, here, all of the other plaintiffs maintain an office in California of which at least two are located in the

1    Northern District.  *See Ex-Im Bank,* WL 5273088, at *2, 5; Goss Decl. at 2; Czebiniak Decl. at 2;

2    Connor Decl. at 2; Cotton Decl. at 2.    Similar to *Pacific Coast*, where the court found the

3    Northern District had a particular interest based on the residence of members of the plaintiff

4    organization, here, Plaintiffs have nearly 10,000 total members who live in the Northern District.

5    *See Pac. Coast*, 2012 WL 3236163, at *4; Goss Decl. at 2; Czebiniak at 3; Connor Decl. at 2;

6    Cotton Decl. at 3.  These connections are sufficient to establish that the Northern District has a

7    "particular interest" in the parties.

8          Defendants cite to *Le v. Zuffa* for the proposition that if "a 'significant connection to the

9    activities alleged' is lacking, then less deference is due <u>even if</u> the plaintiff is a resident of the

10   forum.'"  *Zuffa*, 108 F. Supp. 3d at 779.  In that case, a class of mixed martial arts athletes brought

11   suit against a mixed martial arts promoter for using anticompetitive practices to maintain a

12   monopoly in the industry.  *Id.* at 772–73. There, the court transferred the action from the Northern

13   District of California to the District of Nevada because of a forum selection clause in the athletes'

14   contracts with the promoter and because Nevada was more convenient for the parties and

15   witnesses.  *Id.* at 772, 778.  *Le* is distinguishable from the instant case because there were fourteen

16   named plaintiffs in *Le*, the majority of whom resided outside the Northern District and had little or

17   no connection to the District at all.  *Id.* at 778.  That is not the case here, where there are only four

18   plaintiffs–all of whom have significant connections to the Northern District.

19         Because Defendants have failed to show that all of the operative facts occurred outside this

20   district <u>and</u> this district has no particular interest in the parties or the subject matter, the Court

21   finds that Plaintiffs' choice of forum is entitled to "substantial deference."  Therefore, this factor

22   points away from transfer to the Eastern District of California.

### c.    Local Interest in the Controversy

24         Finally, in order to determine if a transfer of venue is appropriate, this Court must consider

25   "the local interest in having localized controversies decided at home."  *Decker Coal Co. v.*

26   *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  In order to determine if a local

27   interest exists in the transferee district in environmental cases, courts often look to the breadth of

28   the challenged regulation and where the operative facts occurred.  *See Ctr. for Biological Diversity*

United States District Court
Northern District of California

16

1   *v. Lubchenco*, No. C-09-4087 (EDL), 2009 WL 454169, at *6–7 (N.D. Cal. Nov. 30, 2009);

2   *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. CV 12-4407 (SC), 2013 WL 120185, at *5–6

3   (N.D. Cal. Jan. 8, 2013) ("*ALDF*"); *Ctr. for Biological Diversity v. McCarthy*, No. 14-CV-05138

4   (WHO), 2015 WL 1535594, at *5–6 (N.D. Cal. Apr. 6, 2015).

5         In *Lubchenco*, where the CBD challenged the National Marine Fisheries Service's decision

6   not to list the ribbon seal as threatened or endangered under the ESA, the court compared the

7   breadth of the challenged regulation to the challenged regulation in that court's *Kempthorne I*

8   decision. *Lubchenco*, 2009 WL 454169, at *6. In *Kempthorne I*, "the issue of oil and gas

9   activities on Alaskan coastal lands and waters was the focus because the challenged decision

10  authorized the 'incidental take' of polar bears and walrus in the course of these localized economic

11  activities." *Id.* at *6. In contrast, the *Lubchenco* plaintiffs' challenge to the National Marine

12  Fisheries Service's decision not to list the ribbon seal under the ESA was based on the "primary

13  issue of global warming melting the far offshore sea-ice," which threatened the ribbon seals. *Id.*

14  In denying the National Marine Fisheries Service's motion to transfer venue, the court noted that

15  "it is difficult to conceive of a less localized issue than global climate change." *Id.* at *7.

16        *ALDF* presents the opposite end of the spectrum from *Lubchenco*. There, plaintiffs

17  brought suit in the Northern District of California alleging that a single orca whale named "Lolita"

18  was kept in inhumane conditions in an aquarium in Miami in violation of the Animal Welfare Act.

19  *ALDF*, 2013 WL 120185, at *1. The court stated, "cases concerning specific environmental

20  locales or individual animals–as opposed to cases based on more all-encompassing phenomena

21  like global warming–can give certain districts an especially acute interest in having cases

22  decide[d] there, where they would have the most localized impact." *Id.* at *6. The court found

23  there was some local interest in the issue in the Northern District based on the plaintiff's residence

24  in this District but found that there was a stronger interest in Lolita's home jurisdiction, the

25  Southern District of Florida. *Id.* at *5–6.

26        In *McCarthy*, the CBD and the Center for Environmental Health brought suit against the

27  Environmental Protection Agency in the Northern District of California for allegedly failing to

28  comply with its obligations to approve air quality improvement plans in fifteen other districts

United States District Court
Northern District of California

17

1   under the Clean Air Act. *McCarthy*, 2015 WL 1535594, at *1. There, the court noted that similar

2   "cases in [the Northern District] indicate that transferee forums also have an interest when the

3   operative facts occurred in those forums, and that this interest outweighs [a district's] interest in

4   cases involving its citizens." *Id.* at *5. The court found "[the Northern District] has some

5   localized interest in this case because both plaintiffs are California residents . . . whose California

6   members have an interest in traveling to the affected areas." *Id.* This was offset by "each of the

7   potential [fifteen] transferee forums [that] has a stronger localized interest because those forums

8   are in the states whose air quality is at issue or are located where the actors or omissions at issue

9   allegedly occurred or will occur." *Id.* The court ultimately declined to transfer the case because

10  the large number of proposed transferee districts diluted the local interest such that the interest in

11  each transferee district was only marginally stronger than in the Northern District of California.

12      Here, the Court concludes that the Eastern District of California has a slightly stronger

13  local interest in this controversy than the Northern District. With respect to the breadth of

14  Plaintiff's challenge, the challenged Withdrawal is simultaneously national in scope but local in

15  effect; therefore, this factor does not weigh in favor of a strong local interest in either forum. The

16  operative facts linking this action to the Eastern District, however, are decisive in indicating a

17  stronger local interest in the Eastern District.

18      The breadth of the challenged action does not indicate a stronger local interest in either the

19  Northern District or the Eastern District of California. Like in *Lubchenco*, the challenged decision

20  in this case is a federal government agency's failure to protect a species (rather than an individual

21  animal) under the ESA and is national in scope. *See Lubchenco*, 2009 WL 454169, at *1.

22  Plaintiffs also challenge the Service's adoption of the SPOR policy, which underlies the

23  challenged Withdrawal and every other listing decision the Service has made since 2014. *See*

24  Compl. ¶ 20, 21, 83. But like *ALDF,* Plaintiffs' challenge primarily concerns "a specific

25  environmental locale" since the BSSG's habitat is a discrete area within the Eastern District of

26  California and the District of Nevada. *See ALDF*, 2013 WL 120185, at *6; 78 Fed. Reg. 64,358,

27  64,361. Unlike *Lubchenco*, the Plaintiffs' challenge is not so clearly premised on a "global"

28  issue–instead Plaintiffs are seeking to protect the BSSG from activities occurring entirely within

the Eastern District of California and the District of Nevada. *See id.* at \*6; 78 Fed. Reg. 64,358, 64,361. Because the challenged Withdrawal is national in scope but will have predominantly local effects, the breadth of the challenge does not point to a stronger local interest in one forum over the other.

While the breadth of the challenge does not strongly support the conclusion that there is a stronger local interest in the Eastern District, the Eastern District has a slightly stronger local interest in this controversy because the operative facts that occurred in the Eastern District are more immediately related to the instant action than those in the Northern District. There are significant operative facts that connect this action to the Eastern District of California. The Eastern District is home to the BSSG and where the challenged agency rulemaking occurred. 80 Fed. Reg. 22,828, 22,866. As part of the rulemaking process, the Service collected public comments on the Proposed Rule, including comments from each of the Boards of Supervisors of Mono, Inyo, and Alpine Counties. Decl. of Ren Lohoefner Ex. A (Dkt. 12-1) at 3. The location of the BSSG, the agency rulemaking and the input from local agencies in the Eastern District are more immediately related to the instant action and the challenged Withdrawal than the prior litigation in the Northern District.

It is true that there are also operative facts that link this action to the Northern District of California. In particular, the Northern District of California was the home to prior litigation to protect the BSSG and a settlement agreement that contributed to the 2013 Proposed Rule, without which the instant action may not have arisen. Compl. ¶ 49 (citing 71 Fed. Reg. at 76,058). As discussed above, this connection to the Northern District along with the fact that Plaintiffs' have a presence in this District, is sufficient to warrant affording deference to the Plaintiffs' choice of forum.

### 3.    Weighing the Relevant Factors

"[I]n most environmental cases, the issue of which federal district court should adjudicate the issues is determined by weighing a plaintiff's choice of forum against the competing interest in 'having localized controversies decided at home.'" *Kempthorne II*, 2008 WL 4543043, at \*5. That is the case here. Having eliminated factors that are neutral or irrelevant, the question before

1    the Court comes down to whether the deference to which the Plaintiffs' choice of forum is entitled

2    outweighs the localized interest of the Eastern District in this case.  The Court finds that it does.

3            In *Kempthorne II*, where the CBD challenged the Service's determination that the polar

4    bear was threatened, rather than endangered, under the ESA, the court found that even a strong

5    local interest in the controversy in Alaska was not sufficient to overcome the plaintiff's choice of

6    forum.  *Kempthorne II*, 2008 WL 4543043, at *3–4.  There, the plaintiffs were "entitled to some

7    degree of deference" in their choice of forum as one plaintiff resided in the Northern District of

8    California and the others maintained offices here.  *Id.* at *3.  The court held that even though the

9    Northern District "does not have significant ties to the polar bear or to Defendant's rulemaking

10   activity" and "direct interactions between humans and polar bears occur only in" the District of

11   Alaska, this was insufficient to disturb the plaintiffs' choice of venue.  *Id.* at *4.

12           Similarly, in *Ex-Im Bank*, where the CBD brought suit against the Export-Import Bank of

13   the United States for failing to consider the environmental impacts of financing a natural gas

14   project in Australia, the court denied the defendant's motion to transfer even though the transferee

15   district had a stronger local interest in the controversy, was the site of the challenged decision, and

16   was the home of the defendants.  *Ex-Im Bank*, 2013 WL 5273088, at *7.  The CBD acknowledged

17   that residents of the Northern District would not "suffer a unique harm" as a result of the

18   challenged decision, since the challenge was national in scope.  *Id.*  When weighing the plaintiffs'

19   choice of forum against the transferee district's local interest, the court held it was not a "sufficient

20   showing to warrant upsetting Plaintiff's choice of forum."  *Id.* at *8.

21           The facts here are similar to those in *Ex-Im Bank* and *Kempthorne II*.  The challenged

22   listing is national in scope and the BSSG is only found in the Eastern District of California and the

23   District of Nevada.  In both *Ex-Im Bank* and *Kempthorne II* these ties were insufficient to

24   overcome the deference due to the plaintiffs' choice of forum; accordingly, the Court concludes

25   that the localized interest in the Eastern District of California is not strong enough to warrant

26   disturbing Plaintiffs' choice of forum.

27

28

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' Motion to Transfer Venue is DENIED.

**IT IS SO ORDERED.**

Dated: July 15, 2016

_____
JOSEPH C. SPERO
United States Magistrate Judge