UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESERT SURVIVORS, et al., | Case No.  16-cv-01165-JCS |
| Plaintiffs, | |
| v. | **ORDER RE MOTION TO COMPLETE THE ADMINISTRATIVE RECORD** |
| US DEPARTMENT OF THE INTERIOR, et al., | Re: Dkt. No. 34 |
| Defendants. | |

## I.    INTRODUCTION

In this case, Plaintiffs challenge (1) the decision of the U.S. Fish and Wildlife Service ("Service" or "FWS") to withdraw the proposed listing of the Bi-State Sage-Grouse as "threatened" under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, and (2) the new listing policy on which that reversal was based, namely, the Service's "Final Policy on Interpretation of the Phrase 'Significant Portion of its Range' in the Endangered Species Act" (the "SPR Policy").  The Service provided two separate administrative records, one for its final listing determination for the bi-state distinct population segment of greater sage-grouse in California and Nevada ("bi-state DPS AR") and another for the SPR Policy (the "SPR Policy AR"). The dispute that is presently before the Court involves the Service's withholding of documents from the SPR Policy AR on the basis that they are protected by the deliberative process privilege.

In their Motion to Complete the Administrative Record ("Motion"), Plaintiffs asked the Court to compel production of all of  the documents listed on Defendants' SPR Policy AR privilege log that were withheld only on the basis of the deliberative process privilege, a total of 301 documents.   Based on Defendants' subsequent representation that none of these documents reflects "the agency's consideration of political, economic, or other non-statutory factors in its

development of the SPR Policy," see Docket No. 79, Plaintiffs have now limited their request to the 55 documents that Defendants have identified as "Regional office comments on the SPR Policy."

A hearing on the Motion was held on January 13, 2017 and the Court held a further status conference in connection with the dispute on January 27, 2016.  For the reasons stated below, the Court concludes that the balancing test set forth in *F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984) governs the question of whether the 55 documents Plaintiffs seek are protected under the deliberative process privilege.  As the Court explained at the January 27, 2017 status conference, the Court intends to conduct an *in camera* review of ten sample documents (selected by Plaintiffs after Defendants have provided a more detailed privilege log) and will solicit briefs from the parties as to the specific factors the Court should consider in conducting its review.  The purpose of this Order is to rule on certain general arguments raised by the parties and to set forth the principles that will guide the Court in conducting its *in camera* review and ultimately, in making its determinations as to whether the sample documents must be produced.[1]

## II.       BACKGROUND

### A.       The SPR Policy and the Withdrawal of the Proposed Listing of the Bi-State Sage Grouse

The ESA requires the Service to list a species as endangered or threatened if it "is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. §§ 1532(6), 1533.  In *Defenders of Wildlife v. Norton*, the Ninth Circuit found that this language is "inherently ambiguous." 258 F.3d 1136, 1141 (9th Cir. 2001).  In particular, the court found that "to speak of a species that is 'in danger of extinction' throughout 'a significant portion of its range' may seem internally inconsistent, since 'extinction' suggests total rather than partial disappearance."  *Id*.  In that case, the court rejected the Secretary of the Interior's assertion that the "significant portion of its range" language means that "a species is eligible for protection under the ESA if it faces threats

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    in enough key portions of its range that the *entire* species is in danger of extinction, or will be

2    within the foreseeable future." *Id.* at 1141 (internal quotation omitted) (emphasis in original).  The

3    court reasoned,

> If . . . the effect of extinction throughout "a significant portion of its
> range" is the threat of extinction everywhere, then the threat of
> extinction throughout "a significant portion of its range" is
> equivalent to the threat of extinction throughout all its range.
> Because the statute already defines "endangered species" as those
> that are "in danger of extinction throughout all . . . of [their] range,"
> the Secretary's interpretation of "a significant portion of its range"
> has the effect of rendering the phrase superfluous.

9    *Id.* at 1142.

10   The court in *Defenders of Wildlife v. Norton* went on to examine the legislative history of

11   the Endangered Species Act, concluding that Congress intended to provide broader protections to

12   species in danger of extinction than had been afforded under two previous laws enacted in the

13   1960s to protect endangered species, the Endangered Species Conservation Act, Pub.L. 91-135 §

14   3(a), 83 Stat. 275 (Dec. 5, 1969), and the Endangered Species Preservation Act, Pub.L. 89-669 §

15   1(c), 80 Stat. 926 (Oct. 15, 1966).  *Id.*  The court explained that those laws defined endangered

16   species narrowly to include "only those species facing total extinction."  *Id.*  The "significant

17   portion of its range" language in the ESA was thus a major change in the law, the court found, and

18   allows a species to be listed when  "there are major geographical areas in which it is no longer

19   viable but once was" even if the entire species is not in danger of extinction.  *Id.* at 1145.

20   In 2007, the Department of the Interior's Office of the Solicitor issued a memorandum

21   opinion ("2007 Memorandum Opinion" or "Memorandum") regarding the "significant portion of

22   its range" language in order to assist the Service in developing a policy on this question in the

23   wake of *Defender's of Wildlife v. Norton* and other decisions in which courts had struggled with

24   this question.  SPR AR at SPR000427-62.  In the Memorandum, the Solicitor agreed with the

25   Ninth Circuit that this language should not be interpreted to require that a species' viability as a

26   whole must be threatened in order for it to be found endangered in a significant portion of its

27   range, though it disagreed with certain aspects of the court's analysis.  *Id.* at SPR00429-32.

28   On December 9, 2011, the Department of the Interior published a notice of a draft policy in

3

United States District Court
Northern District of California

the Federal Register regarding the interpretation and application of the phrase "significant portion of its range" in the ESA. Draft Policy on Interpretation of the Phrase "Significant Portion of Its Range" in the Endangered Species Act's Definitions of "Endangered Species" and "Threatened Species," 76 FR 76987-01.  The Service noted that "[d]espite the fact that the definitions of 'endangered species' and 'threatened species' have been part of the Act since its enactment in 1973, prior to 2007, neither [FWS nor NMFS] had adopted a regulation or binding policy defining or explaining the application of the phrase 'significant portion of its range,' an element common to both definitions."  *Id*.

In July 2014, after receiving comments from the public, the Service announced its final policy interpretation (the SPR Policy), which provides as follows:

> A portion of the range of a species is "significant" if the species is not currently endangered or threatened throughout all of its range, but the portion's contribution to the viability of the species is so important that, without the members in that portion, the species would be in danger of extinction, or likely to become so in the foreseeable future, throughout all of its range.

Final Policy on Interpretation of the Phrase "Significant Portion of Its Range" in the Endangered Species Act's Definitions of "Endangered Species" and "Threatened Species," 79 FR 37578-01.

On April 23, 2015, the Service withdrew a proposed listing of the Bi-State Sage Grouse as threatened or endangered, applying the SPR Policy and finding that "threats identified in the proposed rule have been reduced such that listing is not necessary for this [Distinct Population Segment]."  Endangered and Threatened Wildlife and Plants; Withdrawal of the Proposed Rule To List the Bi-State Distinct Population Segment of Greater Sage-Grouse and Designate Critical Habitat, 80 FR at 22829, 22852-53 ("Withdrawal Decision"). The proposed listing had been published in October 2013 and the public comment period ended on September 4, 2014.  *Id*. at 22828-29.

**B.    The Withheld Documents**

The documents requested by Plaintiffs in the Motion were withheld solely on the grounds of the deliberative process privilege.  *See* Declaration of Alicia Thesing in Support of Plaintiffs' Motion to Complete the Administrative Record ("Thesing Decl."), Ex. B (privilege log listing

withheld documents at issue); Declaration of Gina Schultz, Docket No. 31-4 ("Schultz Decl. I").

According to the Service's Deputy Assistant Director, Gina M. Schultz, these documents fall into four categories: "(1) discussions and deliberations of the core FWS and [National Marine Fisheries Service ('NMFS')] 'SPR Team' . . . ; (2) FWS Regional Office comments on the Final SPR Policy (including FWS and NMFS Regional Offices), and internal FWS and NMFS discussions regarding the same; (3) interagency discussions arising out of the federal interagency review process coordinated by OMB for the Final SPR Policy; and (4) additional internal deliberative discussions amongst FWS, [U.S. Department of the Interior ("DOI")], and/or NMFS employees (some of whom were not part of the SPR Team)." Declaration of Gina M. Schultz, Docket No. 60-2 ("Schultz Decl. II") ¶ 6.

As noted above, Plaintiffs have now limited their Motion to the documents in the second category, consisting of the Regional Offices' comment on the Final SPR Policy. According to Ms. Schultz, this category contains fifty-five documents that "pertain to comments received by the SPR Team from FWS and NMFS Regional Offices." *Id.* ¶ 8. She further states, "[t]he comments received from the Regional Offices, as well as any subsequent discussions on the comments, provide views and recommendations from FWS and NMFS staff and managers related to the development of the SPR Policy." *Id.*

### C.   The Motion

In the Motion, Plaintiffs argue that the assertion of the deliberative process privilege in this case is inconsistent with the judicial scrutiny that is provided for under the APA and will significantly impede meaningful judicial review by this Court of the decisions that are the subject of Plaintiffs' claims. Motion at 6-13.

First, Plaintiffs point to the "whole record" requirement under the APA. *Id.* at 6. In particular, the APA provides that when reviewing agency action under the APA to determine whether it is arbitrary, capricious or an abuse of discretion, courts are to "review the whole record." Motion at 6 (quoting 5 U.S.C. § 706(2)(A)). According to Plaintiffs, the "whole record" includes "everything that was before the agency pertaining to the merits of its decision." *Id.* (quoting *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir.

1993) (internal citation omitted)).  The court's review will not be meaningful, Plaintiffs contend, if the record is incomplete.  *Id.* at 6-7 (citing *Sierra Club v. U.S. Army Corps of Engineers*, 772 F.2d 1043, 1052 (2d Cir. 1985) ("Courts cannot intelligently perform their reviewing function if an administrative record is inadequate, incomplete or, as here, inconsistent.").  This is because an "agency-curated" record will "sufficiently articulate the agency's reasoning [but] likely will omit contrary evidence that is important and relevant to effective judicial review of the decision."  *Id.* at 7 (citing *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981) ("The 'whole' administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position.").

The DOI itself recognizes this principle, according to Plaintiffs, stating in its service manual that "'[a]ll records that people involved in the decision used or that were available to them when they were making the decision' should be included in the administrative record."  *Id.* (quoting Fish & Wildlife Service Manual, "Records Management," 282 FW 5.4, 5.8 (March 2, 2007)).  Similarly, Plaintiffs contend, "the Department of the Interior advises that an administrative record typically includes '[c]ommunications and other information received from the public and other agencies and any responses to those communications . . . without regard to whether they support or oppose the agency decision or whether the [Administrative Record] Coordinator believes they contain privileged information.'"  *Id.* (quoting DOI, Standardized Guidance on Compiling a Decision File and an Administrative Record).

Plaintiffs argue that in this case, where their challenge is to an implementing policy that they contend will have operational effects that are contrary to the purposes of the ESA, the Service's reliance on the deliberative process privilege is particularly troubling because these documents "discuss the operational effects of the agency decision by those charged with implementing it" and therefore, are an "indispensable" part of the administrative record.  *Id.*  Their omission, according to Plaintiffs, will "directly undercut[] the whole purpose of APA section 706(2) – to foster meaningful judicial scrutiny of executive agency action."  *Id.*

Next, Plaintiffs look at the specific nature of the withheld documents, over two thirds of which "appear to be emails from scientists or regional officers concerning the proposed policies."

*Id.* at 8.  Plaintiffs contend these documents are likely to contain "factual or other relevant information" about the potential impact of the proposed SPR Policy on species within the scientists' geographic region or area of expertise and that such information is highly relevant to the review that the Court must conduct under Section 706(2).  *Id.*  As an example of the importance of such documents, Plaintiffs point to *Center for Biological Diversity v. Kempthorne*, No. CV 07-0038-PHX-MHM, 2008 WL 659822, at *11 (D. Ariz. Mar. 6, 2008).  *Id.*  In that case, the court found that a decision not to list the Desert bald eagle as endangered was arbitrary and capricious based, in part, on comments by FWS regional biologists regarding the threat posed to that species.  Plaintiffs also contend inter- and intra-agency communications by other agency officials have been used by courts in reviewing decisions and actions by the Service that implement the ESA.  *Id.* (citing *Defenders of Wildlife v. Salazar*, 842 F. Supp. 2d 181 (D.D.C. 2012)).

        Plaintiffs also point to the history of the deliberative process privilege, and more broadly, "the concept of an executive branch privilege," to argue that neither the statutory nor common law origins of such a privilege  provide a "foundation for allowing an agency to withhold documents from the full administrative record simply because those documents might express concerns of agency personnel about the impacts or wisdom of the decision or might offer information that conflicts with the decision ultimately adopted."  *Id.* at 9-11 (citing Gerald Wetlaufer, *Justifying Secrecy: An Objection to the General Deliberative Privilege*, 65 Ind. L.J. 845, 856-83 (1990)).  With respect to statutory origins, Plaintiffs cite the Housekeeping Act of 1798 and the Freedom of Information Action ("FOIA") of 1966.  *Id.* at 10.  The former allowed executives to keep documents secret and was revoked in 1958, according to Plaintiffs.  *Id.* (citation omitted).  FOIA exempts from its disclosure requirements "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."  5 U.S.C. § 552(b)(5).  Plaintiffs contend this "exemption from FOIA disclosure of public documents before an agency makes a decision was Congress' way of promoting candid discussions of policy options  . . . [by] prevent[ing]

7

United States District Court
Northern District of California

requesters from obtaining automatic public disclosure of internal agency opinions while the agency is deliberating a policy decision." Motion at 10. That rationale does not apply, however, to APA review of decisions that have already been made to determine whether they are arbitrary, capricious or an abuse of discretion, Plaintiffs assert. *Id.*

Executive privileges recognized under the common law, such as state secrets, identity of informers and mental processes privileges, are also inapplicable, Plaintiffs contend. *Id.* at 10-11. According to Plaintiffs, the Supreme Court in *Citizens to Preserve Overton Park v. Volpe*, recognized that "its review of [an agency decision] under the APA's 'arbitrary and capricious' standard must be 'based on the full administrative record that was before the [agency] at the time he made his decision.'" *Id.* at 11 (citing 401 U.S. 402, 420 (1971)). In that case, Plaintiffs contend, the Court drew a clear distinction between "probing the mental processes of decision makers, which generally is protected by the deliberative processes privilege" and reviewing "a full administrative record, which is required for effective APA review." *Id.* at 11.

Anticipating the Service's reliance on *F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984) in support of its assertion of privilege, Plaintiffs argue that that case is not on point because it did not involve an APA record review but rather, an FTC enforcement action in which the defendants sought disclosure of internal memoranda that contained not only discoverable information but also the agency's enforcement litigation recommendations (which were not discoverable). *Id.* at 13. According to Plaintiffs, because the discoverable information could also be obtained from other sources in that case, the court upheld the assertion of the deliberative processes privilege as to the memoranda. *Id.* The factors considered in that case are "nonsensical in the context of APA policy decision," Plaintiffs assert. *Id.*

Plaintiffs also reject the Service's reliance on *Center for Biological Diversity v. Jewell*, No. 4-cv-02506-RM (D. Ariz. June 14, 2016) (Marquez, J.) ("*CBD I*"), in which the court found that the deliberative process privilege applied to the same 301 documents that the Service contends are privileged here. *Id.* at 12 n. 5. According to Plaintiffs, that case is distinguishable on procedural and substantive grounds, even though the plaintiffs in that case, like Plaintiffs here, challenged a decision not to list a species (the pygmy owl) and the SPR Policy. *Id.* In particular, according to

United States District Court
Northern District of California

1    Plaintiffs, the decision not to list the pygmy owl was not based on the SPR Policy, in contrast to

2    this case.  *Id*.  Moreover, the court in that case did not address the question of whether the

3    deliberative processes privilege is applicable in APA case and instead assumed it was, applying

4    the four-factor test set forth in *Warner*.  *Id*.  Plaintiffs also point out that *CBD I* has no precedential

5    value and therefore is not binding on this Court.  *Id*.

6         Finally, Plaintiffs argue that even if the deliberative process privilege applied, it would be

7    "extremely narrow" and would protect only predecisional documents that "are 'so candid and

8    personal in nature that public disclosure is likely in the future to stifle honest and frank

9    communication within the agency.'"  *Id*. at 13 (quoting *Morley v. Cent. Intelligence Agency*, 508

10   F.3d 1108, 1126 (D.C. Cir. 2007) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d

11   854, 866 (D.C. Cir. 1980))).  In addition, they assert, the privilege does not protect factual material

12   that does not reveal deliberative processes.  *Id*. (citing *Morley*, 508 F.3d at 1127 (quoting *Paisley*

13   *v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983), vacated in part on other grounds, 724 F.2d 201 (D.C.

14   Cir. 1984))).  Plaintiffs contend the Service has made no showing that the documents it seeks to

15   withhold meet these standards.  *Id*.

16        In its Opposition brief, the Service contends its assertion of the deliberative processes

17   privilege is proper because the withheld documents are both predecisional and deliberative.

18   Opposition at 1-2, 7-8 (citing  *FTC v. Warner Communications*, 742 F.2d 1156, 1161 (9th Cir.

19   1984) (per curiam)).  It rejects Plaintiffs' assertion that the deliberative processes privilege is not

20   available in APA cases brought under Section 706(2), arguing that "[c]ourts in this Circuit and

21   elsewhere have consistently upheld the assertion of the deliberative process privilege in the APA

22   judicial review context."  *Id*. at 9 (citing *CBD I*, No. 14-cv-02506-RM (D. Ariz. June 14, 2016);

23   *Center for Biological Diversity v. U.S. Army Corps of Engineers*, No. 14-cv-1667 PSG, 2015 WL

24   3606419, at *3 (C.D. Cal. Feb. 4, 2015) ("*CBD II*"); *Modesto Irrigation Dist. v. Gutierrez*, No. 06-

25   cv-00453 OWW DLB, 2007 WL 763370, at *12 (E.D. Cal. Mar. 9, 2007);  *Oceana, Inc. v. Locke*,

26   634 F.Supp.2d 49, 52 (D.D.C. 2009);  *Overton Park*, 401 U.S. at 420; *San Luis Obispo Mothers*

27   *for Peace v. U.S. Nuclear Regulatory Commission*, 789 F.2d 26, 45 (D.C. Cir. 1986); *Norris &*

28   *Hirshberg, Inc*. v. SEC, 163 F.2d 689, 693 (D.C. Cir. 1947)).  The Service notes that "the Ninth

Circuit has also upheld the withholding of documents under the deliberative process privilege in other contexts, such as discovery . . .  and [FOIA] responses." *Id.* at 10 n. 6 (citing *Hongsermeier v. Comm'r of Internal Revenue*, 621 F.3d 890, 904 (9th Cir. 2010)(discovery); *Warner*, 742 F.2d at 1162 (discovery);  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 984 (9th Cir. 2009) (FOIA)).

The Service places particular emphasis on *CBD I*, in which Judge Marquez concluded, after reviewing *in camera* the same 301 documents that the Service withholds here, that the deliberative privilege applied.  *Id.* at 10.  In that case, in which Center for Biological Diversity was also a plaintiff (along with other plaintiffs who are not involved in the instant action), the court found that the documents were both predecisional and deliberative and concluded that they were protected under the deliberative processes privilege based on consideration of the factors set forth in *Warner*.  *Id.*  The court did not, however, address the question of whether the deliberative process privilege was available in APA record review cases because that issue was not raised.  *Id.* n. 7.  According to the Service, Plaintiffs do not explain why they did not raise this issue in *CBD I*. *Id.*  The Service rejects Plaintiffs' attempt to distinguish that case on the basis that the listing decision was "not intimately related" to the SPR Policy given that in that case, as in this one, the plaintiffs brought a separate challenge to the SPR Policy.  *Id.*

Defendants argue that Plaintiffs' reliance on the "whole record" provision of the APA "overstates the scope of a record considerably." *Id.* at 12.  According to Defendants, the "whole record" need not "encompass any potentially relevant document" or include "privileged documents such as deliberative inter-agency memoranda." *Id.* (citing *Fund for Animals v. Williams*, 245 F.Supp.2d 49, 57 n.7 (D.D.C. 2003);  *CBD I*, No. 14-cv-02506-RM (D. Ariz. June 14, 2016);  *Izaak Walton League of Am. v. Marsh*, 655 F.2d 346, 370 (D.C. Cir. 1981);  *Oceana*, 634 F.Supp.2d at 52;  *Modesto*, 2007 WL 763370, at *4-5;  *Ariz. Rehab. Hosp. v. Shalala*, 185 F.R.D. 263, 267 (D. Ariz. 1998)).  Defendants assert that permitting an agency to withhold deliberative processes documents as privileged "makes sound sense because such a privilege 'enhance[s] the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.'" *Id.* at 13 (quoting *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) and citing *Lahr*, 569 F.3d at 981; *Sellers v.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *IRS*, No. 08-cv-00553-AC, 2009 WL 700647, at *11 (D. Or. Mar. 17, 2009)).  Defendants contend

2    "[c]ourts in this Circuit thus have repeatedly recognized the risk that 'debate and deliberation

3    could not occur if any difference of opinion along the way could establish a basis for finding the

4    final decision arbitrary.'"  *Id.* at  14 (quoting *Guidiville Rancheria of Cal. v. United States*, No. 12-

5    cv-01326 YGR, 2013 WL 6571945, at *8 (N.D. Cal. Dec. 13, 2013); and citing *CBD II*, 2015 WL

6    3606419, at *7; *Nw. Envtl. Advocates v. EPA*, No. 05-cv-01876-HA, 2009 WL 349732, at *3 (D.

7    Or. Feb. 11, 2009)).

8            Other policy reasons cited by Defendants for supporting the deliberative processes

9    privilege are that it "protects the public from the confusion that would result from premature

10   exposure to discussions occurring before the policies affecting it had actually been settled upon"

11   and "protects the integrity of the decision-making process itself by confirming that 'officials

12   should be judged by what they decided[,] not for matters they considered before making up their

13   minds.'"  *Id.* at 14 n. 10 (quoting *Sellers v. IRS*, No. 08-cv-00553-AC, 2009 WL 700647, at *11

14   (D. Or. Mar. 17, 2009) (internal citation omitted)).

15           Here, the Service contends it "has identified a substantial risk that 'the quality of future

16   internal deliberations . . . would suffer' if the withheld deliberative process documents are added

17   to the record."  *Id.* at 15 (quoting Shultz Decl. I at ¶7; *see also* Shultz Decl. II at ¶11).  Schultz

18   states in her declaration that "[i]f  the candid views of staff contained in emails were required to be

19   disclosed in the administrative record, the quality of future internal deliberations on resource

20   issues would suffer . . .[because] FWS and other federal agency employees would hesitate to give

21   their complete, honest recommendations on issues via email based on fears that these candid

22   recommendations would be provided to, and misunderstood by, the public and other entities with

23   whom FWS deals . . . on a frequent basis."  Schultz Decl. I at ¶ 7.  She further states that "the

24   working drafts of the SPR Policy contain comments from personnel on significant legal or policy

25   matters" and that "FWS personnel may hesitate to provide their frank and forthright opinions and

26   recommendations on these draft documents based on fears that candid recommendations would be

27   broadcast outside the agency and misunderstood outside of context."  *Id.*   In short, she opines,

28   "this material, if disclosed, would significantly and adversely impair the integrity and quality of

1    the decision making process for future FWS policy decisions." *Id*.

2         Defendants further assert that disclosure of these documents would be improper because

3    "the SPR Policy must be 'judged in accordance with its *stated* reasons.'"  Opposition at 15

4    (quoting *In re Subpoena Duces Tecum Served on Office of Comtroller of Currency*, 156 F.3d 1279

5    (D.C. Cir. 1998)).  Therefore, Defendants contend, "Plaintiffs should not be permitted 'to probe

6    the editorial and policy judgment' of decision-makers or seek to "'uncover any discrepancies

7    between the findings, projections, and recommendations' in draft documents and those in final

8    decision documents."  *Id*. (quoting *In re Subpoena Duces Tecum*, 156 F.3d at 1279 (emphasis

9    added) and *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1988)).

10        Defendants reject Plaintiffs' reliance on internal documents such as the Service Manual or

11   the DOI guidance document, arguing that both of the documents cited by Plaintiffs recognize that

12   privileged documents may be excluded from the administrative record.  *Id*. at 16-17 (citing 282

13   FW 5, Compiling a Decision File and an Administrative Record (Mar. 2, 2007); Interior, Office of

14   the Solicitor, Standardized Guidance on Compiling a Decision File and an Administrative Record

15   (June 27, 2006)).  Defendants also argue that Plaintiffs have not met their burden to show the

16   documents are likely to be important to the Court's review when they state that the withheld

17   documents are "likely to include factual or relevant information" from "scientists or regional

18   offices."  *Id*. at 17 (quoting Motion at 8).  Defendants further fault Plaintiffs for their "lack of

19   specificity" to the extent Plaintiffs assert that approximately two thirds of the withheld documents

20   appear to fall within this category without identifying any specific document.  *Id*. at 17 n. 13.

21   Moreover, Defendants assert, even if the documents contain relevant factual information, that

22   information may be withheld if it is "inextricably intertwined" with "policy-making processes."

23   *Id*. at 18-19 (citing *Pacific Coast Shellfish Growers Ass'n v. v. U.S. Army Corps of Eng'rs*, No.

24   16-cv-00193 RAJ, 2016 WL 3000259, at *6 (W.D. Wash. May 25, 2016); *Nat'l Wildlife Fed'n*,

25   861 F.2d at 111).  Finally, Defendants concede that the deliberative process privilege is a qualified

26   privilege that can be overcome under certain circumstances but contend Plaintiffs have waived any

27   such argument by failing to address the four-factor test set forth in *Warner* for overcoming the

28   privileg*e*.  *Id*. at 20-21 n.

United States District Court
Northern District of California

United States District Court
Northern District of California

1      In their Reply, Plaintiffs assert that Defendants have misrepresented the "prevailing case

2 law" when they assert that "'courts in this Circuit and elsewhere' apply the 'deliberative process

3 privilege' in the [APA] context."  Reply at 1. Most of the cases Defendants cite, according to

4 Plaintiffs, applied the deliberative process privilege in the context of FOIA and discovery requests

5 and did not involve record review under the APA.  *Id.*  The former are not applicable here,

6 according to Plaintiffs, because the FOIA cases were decided under a statutory exemption that

7 prevents premature disclosure of pre-decisional documents where a policy is still being developed

8 and no comparable exception exists under the APA.  *Id.*  Nor does the rationale that underlies that

9 exemption make sense in the context of an APA record review case, Plaintiffs contend.  *Id.*  The

10 logic that underpins the common law mental processes privilege that has been applied in civil

11 discovery cases also does not apply, according to Plaintiffs, because it flies in the face of the "very

12 purpose of judicial scrutiny" under the APA, which is to "ensure the integrity and legality of the

13 agency decision process."  *Id.*

14      Plaintiffs further assert that the cases that are cited by Defendants that *do* involve the APA

15 do not support Defendants' position because in those cases, the courts addressed whether the

16 record should be supplemented with information that was not considered by the agency that made

17 the decision "and sometimes did not even exist[ ] at the time of the challenged decision."  *Id.* at 3

18 (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-744 (1985); *Citizens to Preserve

19 Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971);  *Southwest Center for Biological Diversity

20 v. U.S. Forest Service*, 100 F. 3d 1443 (9th Cir. 1996); *San Luis Obispo Mothers for Peace v. U.S.

21 Nuclear Regulatory Comm'n*, 789 F. 2d 26 (D.C. Cir. 1986); *Oceana Inc, v. Pritzker*, No. 1:15-cv-

22 01220-ESH, slip op. (Dkt. 20) (D.D.C. Nov. 4, 2016); *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49

23 (D.D.C. 2009)).  That is not the case as to the withheld documents at issue here, Plaintiffs contend.

24 *Id.*

25      Plaintiffs reject Defendants' claim that protection of the withheld documents in APA

26 record review cases is necessary to ensure that agency officials feel free to speak with candor

27 when making decisions.  *Id.* at 7.  While such protection may be necessary to ensure candor in the

28 FOIA context, Plaintiffs contend, it is "not a concern in the APA context, where agencies and their

1   staff fully understand that administrative records, once a decision becomes final, are subject to

2   review by the courts." *Id.* Even if there is a valid concern about candor in connection with APA

3   record review cases, Plaintiffs argue that the Service has not offered any "evidence . . . that the

4   biologists, regional officials and others who commented on the [SPR] Policy would be in any way

5   deterred by the knowledge that their written comments would become part of the APA record."

6   *Id.* at 8.   Plaintiffs further challenge Defendants' assertion that disclosure of the withheld

7   documents would impair the Service's decision-making ability on the ground that the authors of

8   many of the documents appear to be staff biologists and regional office staff, who are not

9   responsible for making governmental decisions.   *Id.* at 9 (citing *Federal Trade Commission v.*

10  *Warner Communications, Inc.*, 742 F.2d 1156 (9th Cir. 1984)).

11           Plaintiffs also reject Defendants' argument that they have waived the argument that even if

12  the privilege is available in the APA context it is inapplicable under the circumstances here. *Id.* at

13  9.  Plaintiffs contend they addressed the *Warner* factors in their opening brief and that these

14  factors support the conclusion that the privilege is not properly asserted in this case. *Id.* at 10-11.

15           Plaintiffs argue that only a handful of cases have applied the deliberative process privilege

16  in APA record review cases and that these are neither "precedential nor persuasive."  *Id.* at 12-14

17  (addressing the application of the deliberative process privilege in *Modesto Irrigation Dist. v.*

18  *Gutierrez*, No. 1:06-cv-00453 OWW DLB, 2007 WL 763370, *4-5 (E.D. Cal. Mar. 9, 2007);

19  *Northwest Environmental Advocates v. EPA*, No. 05-cv-01876-HA, 2009 WL 349732 (D. Or. Feb.

20  11, 2009);  *Center for Biological Diversity v. U.S. Army Corps of Engineers*, No. 14-cv-

21  1667 PSG, 2015 WL 3606419 (C.D. Cal. Feb. 4, 2015);  *CBD I*, No. 14-cv-02506-RM (D. Ariz.

22  June 14, 2016)).

23           Finally, Plaintiffs contend their request for the documents the Service has withheld is

24  reasonable.  *Id.* at 14.  In particular, they assert that they are not asking for "asking for 'every

25  document potentially relevant' to the Service's challenged decision, as Defendants contend.  *Id.*

26  (quoting Opposition at 6, 12).  Instead, they are asking only for the documents that "Defendants

27  themselves have asserted were relevant to the challenged decision and considered by the Service"

28  in adopting the SPR Policy.  *Id.*

United States District Court
Northern District of California

# III.     ANALYSIS

## A.     The Deliberative Process Privilege

The deliberative process privilege is a common law privilege, but "[f]ederal courts regularly apply FOIA precedent when interpreting the deliberative process privilege" because that privilege has been incorporated into FOIA in Exemption 5, which "permits nondisclosure of 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.'" *Nw. Envtl. Advocates v. U.S. E.P.A.*, No. CIV 05-1876-HA, 2009 WL 349732, at *3 (D. Or. Feb. 11, 2009) (quoting 5 U.S.C. § 552(b)(5)).  To qualify for protection under the deliberative process privilege, a document must be both (1) "predecisional," that is, "generated before to the adoption of agency's policy or decision" and (2) "deliberative," meaning that it contains opinions, recommendations or advice about agency policies.  *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980)).  The privilege does not cover "[p]urely factual material that does not reflect the deliberative process." *Id.* (citation omitted).  On the other hand, the privilege applies where the "factual material is so interwoven with the deliberative material that it is not severable."  *Id.* (citing *Binion v. Department of Justice*, 695 F.2d 1189, 1193 (9th Cir. 1983)).

In *Coastal States*, the court described the purposes of the deliberative process privilege as follows:

> The privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege is a qualified privilege.  *Warner*, 742 F.2d at 1161.  Thus, a party may obtain disclosure of deliberative materials if it can establish that the need for the materials to allow for accurate fact-finding outweighs the government's interest in non-disclosure.

1    *Id.* (citing *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 658 (6th Cir.1976), *cert. denied*,

2    430 U.S. 945 (1977); *United States v. American Telephone and Telegraph Co.*, 524 F. Supp. 1381,

3    1386 n. 14 (D.D.C.1981)).  The Ninth Circuit in *Warner* set forth four non-exclusive factors that

4    may be considered in determining whether the litigant has met this requirement:  "1) the relevance

5    of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and

6    4) the extent to which disclosure would hinder frank and independent discussion regarding

7    contemplated policies and decisions."  *Id.* (citations omitted).   "Other factors that a court may

8    consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact

9    finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues

10   concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of

11   federal law."  *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003).

12   **B.   Standards Governing Review of the Record Under the APA**

13        Under the APA, a reviewing court shall "hold unlawful and set aside agency action,

14   findings, and conclusions found to be . . .  arbitrary, capricious, an abuse of discretion, or

15   otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Section 706 expressly provides that

16   in determining whether a decision is arbitrary and capricious, "the court shall review *the whole*

17   *record* or those parts of it cited by a party . . . ."  5 U.S.C. § 706 (emphasis added).  The Ninth

18   Circuit has held that "'[t]he whole record' includes everything that was before the agency

19   pertaining to the merits of its decision."  *Portland Audubon Soc. v. Endangered Species Comm.*,

20   984 F.2d 1534, 1548 (9th Cir. 1993) (citing *Thompson v. United States Dep't of Labor*, 885 F.2d

21   551, 555-56 (9th Cir.1989)).  This includes "'all documents and materials directly or indirectly

22   considered by agency decision-makers and  . . . evidence contrary to the agency's position.'"

23   *Thompson*, 885 F.2d at 555 (quoting *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 32

24   (N.D.Tex.1981)).  The court in *Portland Audubon Society* reasoned that "[a]n incomplete record

25   must be viewed as a 'fictional account of the actual decisionmaking process.'" *Id.* (quoting *Home*

26   *Box Office, Inc. v. Federal Communications Comm'n*, 567 F.2d 9, 54 (D.C.Cir.1977)).  The court

27   continued, "[i]f the record is not complete, then the requirement that the agency decision be

28   supported by 'the record' becomes almost meaningless."  *Id.* (citing *Home Box Office, Inc. v.*

United States District Court
Northern District of California

*Federal Communications Comm'n*, 567 F.2d 9, 54 (D.C.Cir.1977)).

One of the seminal cases that informs the federal courts' understanding of the "whole record" requirement and the type of scrutiny that is required under Section 706(2)(A) is *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971).  In that case, the plaintiffs challenged a decision by the Secretary of Transportation, issued without factual findings, to build a highway that would cut through a large park in Memphis, even though federal law prohibited the use of federal funds where a "feasible and prudent" alternative route was available.  *Id*. at 404-405. The Secretary of Transportation submitted affidavits prepared for the litigation and the lower courts based their review of the Secretary's decision based solely on those affidavits.  *Id*. at 409.  The lower courts refused the plaintiffs' request to depose a former Federal Highway Administrator who had been involved in the decision on the basis that "probing of the mental processes of an administrative decisionmaker was prohibited."  *Id*.   It went on to affirm the decision of the Secretary based on the affidavits.  *Id*. at 409.

The Supreme Court reversed, holding that in reviewing agency action under the "arbitrary and capricious" standard of Section 706 of the APA, courts must conduct a "thorough, probing, in-depth review."  401 U.S. at 415.  In particular, the Court explained, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Id*. at 417 (citations omitted).   The Supreme Court went on to find that the affidavits offered by the Secretary were merely "post-hoc rationalizations" of the decision that provided "an inadequate basis for review" and "clearly [did] not constitute the 'whole record' compiled by the Agency," under Section 706.  *Id*. at 419.   The Court concluded that it was not required to remand to the Secretary to make factual findings because there was an "administrative record that allows the full, prompt review of the Secretary's action," even though that record was not before the Court because the lower courts had relied entirely on the affidavits.  *Id*.   Instead, it remanded to the district court for "plenary review of the Secretary's decision," instructing it to review the agency action "based on the full administrative record that was before the Secretary at the time he made the decision."  *Id*. at 420.

The Court also left open the possibility that it might be necessary for the district court to

United States District Court
Northern District of California

require testimony from the administrative officials who participated in the decision.  *Id.*  In particular, it acknowledged that the "bare record [might] not disclose the factors that were considered or the Secretary's construction of the evidence" and therefore "it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves."  *Id.*  It acknowledged, however, that "such inquiry into the mental processes of administrative decisionmakers is usually to be avoided" and therefore, if there were "administrative findings that were made at the same time as the decision . . . there must be a strong showing of bad faith or improper behavior before such inquiry can be made."  *Id.*

As *Citizen's to Preserve Overton Park* suggests, the term "whole record" has not been interpreted to preclude the withholding of documents or information considered by an agency in connection with a decision on the basis of privilege.  *See Arizona Rehab. Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 267 (D. Ariz. 1998) ("In spite of this rather expansive view of what constitutes the 'whole' record for purposes of APA review, exceptions based on claims of privilege are recognized.");  *see also Izaak Walton League of Am. v. Marsh*, 655 F.2d 346, 370 (D.C. Cir. 1981) (holding that "[i]t is well established that an agency may claim a privilege with respect to documents that may have influenced a particular decision" but also noting that the court "would not uphold the claim of privilege if failure to disclose the [information] would substantially impair the rights of" the party challenging the agency action).  However, the relationship between the "whole record" requirement under Section 706 of the APA and the deliberative process privilege has not been directly addressed by the Supreme Court or the Ninth Circuit.

### C.    Whether the Deliberative Process Privilege is Available in Record Review Cases Brought Under the APA

Plaintiffs ask the Court to hold that the deliberative process privilege is unavailable in APA cases claiming that agency action was "arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with the law," asserting that the privilege is inconsistent with the APA's "whole record" requirement and the court's obligation to conduct a meaningful review of the record.  Plaintiffs' concerns carry some weight with the Court.  There is a tension between the court's duty to "consider whether the decision was based on a consideration of the relevant

United States District Court
Northern District of California

1   factors," *Citizens of Overton Park*, 401 U.S. at 417, on the one hand, and a privilege that protects

2   from disclosure deliberative documents reflecting the factors the agency considered in making its

3   decision.   Nonetheless, the Court rejects Plaintiffs' assertion that the deliberative process

4   privilege may not be applied, under any circumstances, in APA record review cases.

5   There can be no doubt that under some circumstances, pre-decisional deliberative

6   communications may go to the heart of the question of whether an agency action was arbitrary and

7   capricious, an abuse of discretion or otherwise inconsistent with the law under Section 706(2) of

8   the APA.  For example, in *Center for Biological Diversity v. Kempthorne*, No. CV 07-0038-PHX-

9   MHM, 2008 WL 659822 (D. Ariz. Mar. 6, 2008), communications between the Washington office

10  and scientists and staff at certain regional FWS offices included what is the equivalent of a

11  "smoking gun" in an environmental case – statements that the decision had already been made on

12  policy grounds and that the staff at the regional offices needed to come up with ways to defend it. [2]

13  *Id.* at *11 ("[w]e've been given an answer now we need to find an analysis that works. . . . Need to

14  fit argument in as defensible a fashion as we can.").  Similarly, in *Defenders of Wildlife v. Salazar*,

15  comments by the agency's Regional Directors about a proposed regulation that was subsequently

16  issued by DOI under the ESA were the basis for the court's conclusion that the agency had

17  violated the APA's arbitrary and capricious standard because the agency "for all practical

18  purposes, ignored the warnings and advice of their own in-house experts . . . about the future

19  adverse impact of the" regulation "on the many species protected under the Congressional

20  mandate of the ESA."  842 F. Supp. 2d 181, 188-89 (D.D.C. 2012).

21  Another example cited by a legal commentator in a 2009 law review article involves

22  apparent abuses by a DOI Deputy Assistant Secretary who had oversight of FWS operations,

23  including ESA reviews, who was found by the Office of the Inspector General of DOI to have

24  routinely intimidated and bullied field staff to change their analysis and ignore good science to

25  conform to her policy positions.  Michael Ray Harris, *Standing in the Way of Judicial Review*, 53

26  St. Louis U. L. J. 349, 395 (2009) (citing Report of Investigation, found at

27

28  _____
    [2] In *Kempthorne*, the government did not assert the deliberative process privilege.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    http://www.biologicaldiversity.org/swcbd/PROGRAMS/esa/ pdfs/ doi-ig-report_jm.pdf).

2    The Court concludes, however, that the appropriate way to address these circumstances is

3    through *in camera* review and a rigorous application of the balancing test set forth in *Warner*

4    rather than rejecting the application of the privilege altogether in cases involving APA record

5    review.

6    First, the Court is not persuaded that the APA's "whole record" requirement, as interpreted

7    by the federal courts, is necessarily inconsistent with the assertion of the deliberative process

8    privilege.  In particular, it is apparent from the case law that the phrase "whole record" is a term of

9    art that under some circumstances, at least, does not extend to privileged communications.  *See*

10   *Arizona Rehab. Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 267 (D. Ariz. 1998); *Izaak Walton League*

11   *of Am. v. Marsh*, 655 F.2d 346, 370 (D.C. Cir. 1981).  Further, in *Citizens to Preserve Overton*

12   *Park*, the Supreme Court at least implied that an administrative record that excludes evidence

13   relating to the mental processes of a decision maker might be complete under some circumstances.

14   Consequently, the "whole record" requirement of the APA does not provide significant guidance

15   in determining whether the deliberative process privilege is available under the APA.

16   Second, federal courts, including the Ninth Circuit, have accepted the general premise that

17   forced disclosure of predecisional deliberative communications can have an adverse impact on

18   government decision-making.  *See, e.g., F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1162

19   (9th Cir. 1984) (finding that disclosure of agency memoranda prepared internally by the Federal

20   Trade Commission's Bureau of Economics was likely to "chill[ ] frank discussion and deliberation

21   in the future among those responsible for making governmental decisions" and would

22   "encourage[] the Commission to have deliberative reports and recommendations prepared only by

23   those economists who will draw the conclusions sought by the Commission.").  While Plaintiffs –

24   and at least one commentator – argue that there is no evidence to support the connection between

25   disclosure of deliberative communications and chilling, *see* Wetlaufer, 65 Ind. L.J. at 886-887, the

26   concern of federal courts, to the extent it is justified at all, appears to be no less salient when

27   disclosures are required in APA record review cases than in other contexts.  It is this Court's

28   obligation to apply the federal common law of privilege.   As there is binding authority that

United States District Court
Northern District of California

1   requires this Court to be mindful of the possibility of chilling of frank and candid deliberations by

2   administrative decision-makers, the undersigned declines Plaintiffs' invitation to refuse to apply

3   the privilege on the basis that such chilling simply does not occur or is not a legitimate concern in

4   the APA context.

5       The Court also finds unpersuasive Plaintiffs' assertion that the *Warner* factors are

6   "nonsensical" in the APA context.  *See* Reply at 10.  To the contrary, the court finds that *Warner*

7   offers an approach that allows courts to balance the need to conduct a meaningful review of

8   agency decision-making under Section 706 of the APA against the possibility that disclosure

9   might give rise to a chilling effect that threatens the quality of agency actions.  This balancing is

10  illustrated in the handful of cases that have applied the *Warner* factors in the APA context, which

11  offer some guidance as to how the factors may apply in this case.

12      The first factor is relevance.  Plaintiffs contend the documents that were before the agency

13  are always relevant because the agency's decision must be supported by the record.  *Id*.  The

14  undersigned finds, however, that the relevance of pre-decisional communications is likely to vary

15  depending on the type of communication at issue and the contents of the communication.   For

16  example, in *CBD II*, Judge Gutierrez found in applying the *Warner* factors that certain *types* of

17  communications were likely to be relevant to whether the challenged decision was arbitrary and

18  capricious.  *Id*. at *6.   The court reasoned:

19          Documents disclosing information before the Corps regarding the
20          environmental impacts of the Project and the adequacy of mitigation
            measures and special conditions are relevant to Plaintiff's challenge
21          that the issuance of the permit in the face of that information was
            arbitrary and capricious.  Although the "reasonableness of the
22          agency's action is judged in accordance with its stated reasons" in
            its final decision, the Court should analyze whether that decision
23          properly flowed from the evidentiary record before the agency.  *See
            Allegheny Def. Project, Inc. v. U.S. Forest Serv*., 423 F.3d 215 (3d
24          Cir.2005). Thus, the privileged documents containing information
            critiquing and analyzing the permit impacts and conditions are
25          relevant to whether the Corps issued the permit arbitrarily and
            capriciously, and this factor weighs in favor of disclosure

26  *Id*. at *6 (emphasis added).

27      Similarly, in *Northwest Environmental Advocates v. U.S. E.P.A*., the court ordered

28  production, after *in camera review*, of preliminary drafts of scientific documents that were

21

United States District Court
Northern District of California

"relatively polished" and scientific in nature, even though they might "treat scientific information differently than it is treated in the final draft."  No. CIV 05-1876-HA, 2009 WL 349732, at *8 (D. Or. Feb. 11, 2009).  The court reasoned that these documents were relevant to the question of whether the agency was "using the best scientific information available," a question that was "properly before the court."  *Id.*  "Indeed," the court stated, "this is precisely the sort of information that ought to be in front of the court when it determines whether the decisions made by the agencies were arbitrary, capricious, or otherwise not in accordance with law."  *Id.*[3]

In applying the *Warner* factors to the dispute at hand, the undersigned will look to the nature of the withheld documents and the context in which the communications were made to determine their relevance to Plaintiffs' claim under Section 706(2) of the APA.

Similarly, the second *Warner* factor, the availability of "other evidence" with the same information, need not give rise to the same answer in every case.  For example, in *CBD II*, the government provided Judge Gutierrez with sufficient detail about the contents of the withheld documents to allow him to address this factor with some degree of specificity and to identify unprivileged evidence contained in the administrative record that addressed the same subject matter as the withheld documents.  Some decisions applying the *Warner* factors in the APA context have addressed this factor in a relatively conclusory manner.  *See, e.g., Modesto Irrigation Dist. v. Gutierrez,* No. 1:06-CV-00453 OWW DLB, 2007 WL 763370, at *11 (E.D. Cal. Mar. 9, 2007)(concluding based on the "breadth and extent of the existing [administrative record]" that this factor supported assertion of the deliberative privilege because the "plaintiffs can adequately frame their arguments based on the existing AR"); *CBD I*, No. 14-cv-02506-RM (D. Ariz. June 14, 2016) (holding that under *Warner*, the same 301 documents that have been withheld in this case are protected by the deliberative process privilege without specifically addressing whether the same information was available in the existing administrative record).  The undersigned finds that while such an approach may appropriate in cases where the other *Warner* factors strongly support

---

[3] Presumably, communications that reflect reliance on improper factors, such as the ones at issue in *Kempthorne* (discussed above) would also be highly relevant and would weigh heavily in favor of disclosure under *Warner*.  The Service has represented, however, that the withheld documents reveal no such communications.

1    the assertion of the deliberative process privilege, in closer cases – for example, where the

2    withheld documents contain information that is highly relevant to the plaintiff's claims – a more

3    detailed showing that the same information is available elsewhere may be required.

4         The third *Warner* factor looks to the nature of the government's role in the litigation.  In

5    *CBD II*, Judge Gutierrez found that this factor weighed against upholding the deliberative process

6    privilege because the government was a defendant in the litigation.  2015 WL 3606419, at *7

7    (quoting *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1028 (E.D. Cal. 2010)("The fact that a

8    government entity's action is the focal point of litigation weighs against upholding the deliberative

9    process privilege."));  *see also Arizona Rehab. Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 271 (D.

10   Ariz. 1998) (finding under *Warner* that "the Government's role in the litigation is primary since

11   the Agency's actions are challenged in this APA suit").   Thus, Plaintiffs may be correct that this

12   factor will often be the same in APA cases challenging agency action under Section 706(2).  Even

13   so, this does not make consideration of this factor nonsensical.  Rather, it simply reflects the fact

14   that APA record review cases raise special concerns with respect to the assertion of the

15   deliberative process privilege.[4]

16        Finally, the fourth *Warner* factor, which asks whether the disclosure of a document or

17   communication is likely to have a chilling effect, need not give rise to a uniform answer.  Rather,

18   as the court recognized in *Northwest Environmental Advocates v. EPA*, the disclosure of some

19   types of documents will be less likely to cause embarrassment or chilling than others.  *See* 2009

20   WL 349732, at *8.  In that case, the court distinguished between "preliminary drafts," on the one

21   hand, and documents that contained "preliminary staff views or tentative opinions."  *Id.*  The court

22   found that the disclosure of the former type of document was not likely to chill speech, even

23   though such documents might be used to recreate the course of the decisionmaking process

24   because "[t]hese are relatively polished drafts, and the recreation of the decisionmaking process

25   _____

26   [4] The Court notes that Judge Wanger concluded in *Modesto* that the third *Warner* factor requires
     the court to look for evidence that the government acted in bad faith.  *See* 2007 WL 763370, at
27   *12. The undersigned concludes that while this factor does not *preclude* the Court from
     considering whether there is evidence of bad faith on the part of the government, it is not limited
28   to that question.  Rather, the Court adopts the broader interpretation of this factor used in *CBD II*,
     *Thomas v. Cate*, and *Arizona Rehab. Hosp., Inc. v. Shalala*.

United States District Court
Northern District of California

should in no way embarrass the agencies." *Id*. at *7.  On the other hand, the court found, disclosure of the second category of documents might chill speech:

> These documents  . . . represent internal discussions concerning the method by which information is to be analyzed or how the law is to be applied to that information. Some of these documents express doubt or confusion regarding the information before the agency or how it should be interpreted. Others are the fragmented thoughts of individuals, or embryonic draft documents that risk misinterpretation should they be subject to disclosure. Although some of these drafts are of a scientific nature, substantial portions of these unpolished scientific drafts contain the personal views of agency staff or contain questions concerning the accuracy of the information or analysis contained within the draft. Some of these documents are emails requesting clarification on issues before the agency, or discussing the manner in which the agency plans to move forward. These documents represent the give-and-take of the agencies' internal deliberations, and their disclosure would discourage such deliberations.

*Id*. at *8.

In sum, the Court concludes that the deliberative process privilege is available in APA cases but because it is a *qualified* privilege, courts must look to the specific circumstances, applying the approach set forth in *Warner*, to determine whether the privilege should be upheld as to particular documents and communications.  Further, while Plaintiffs' Motion focused heavily on their assertion that the deliberative process privilege may not *ever* be applied in APA record review cases, they also made clear their position that the assertion of the privilege under the specific facts of this case is improper.  Therefore the Court concludes that Plaintiffs have not waived that challenge.

## IV.   CONCLUSION

The Court rejects Plaintiffs' argument that as a general matter, the deliberative processes privilege cannot be invoked in cases involving challenges to agency action under Section 706(2) of the APA.   The Court does not reach at this time the question of whether the deliberative process privilege should be upheld with respect to the specific documents Plaintiffs seek.  Rather, the Court will decide that question according to the process described at the January 27, 2017 status conference.  In particular, by February 10, 2017, Defendants shall provide Plaintiffs with an amended privilege log describing in greater detail the contents of the 55 documents containing

regional office comments on the Final SPR Policy.  *See* Docket No. 80.  In addition, the Court requests that Defendants file under seal all of the 301 documents originally sought by Plaintiffs, which were previously lodged with the Court at the Court's request.[5]  Defendants need not provide paper Chambers copies of the documents as these have already been delivered to Chambers.  Defendants should file a log, however, listing the documents that fall into each of the categories described by Ms. Schultz in her declaration.  The documents should be identified by their number on the privilege log previously provided to the Court.  To avoid confusion, the Court also requests that Defendants use in their amended privilege log the same privilege log numbers that were used on the previous privilege log for the 55 documents containing regional office comments on the Final SPR Policy.

By March 3, 2017, Plaintiffs shall select ten (10) of the documents described in the amended privilege log for *in camera* review and shall file a brief addressing why these documents are subject to disclosure under the *Warner* test.  Defendants shall file a responsive brief by March 17, 2017.  Plaintiffs may file a Reply by March 24, 2017.  Unless notified by the Court, the Court will determine without a hearing which, if any, of the ten documents must be disclosed.  The parties will then be expected to meet and confer as to any disputes that remain as to whether the other 45 documents are protected by the deliberative process privilege.

**IT IS SO ORDERED.**

Dated: February 6, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge

---

[5] While the Court does not envision conducting an *in camera* review of all of these documents and will likely limit its review to the ten sample documents selected by Plaintiffs, it retains discretion to conduct a broader review of the documents if it deems necessary.