UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DESERT SURVIVORS, et al., Plaintiffs, v. US DEPARTMENT OF THE INTERIOR, et al., Defendants. | Case No. 16-cv-01165-JCS<br><br>**ORDER RE MOTION TO COMPLETE THE ADMINISTRATIVE RECORD: COURT'S SAMPLE DOCUMENT REVIEW**<br><br>Re: Dkt. No. 34 |
|---|---|

## I. INTRODUCTION

Plaintiffs have brought a Motion to Complete the Administrative Record ("Motion") in which they ask the Court to compel production of documents that have been withheld by the United States under the deliberative processes privilege. In its February 6, 2017 Order ("the February 6, 2017 Order"), the Court ruled on some of the legal disputes between the parties relating to the application of the privilege to the documents at issue in this case. Here, the Court addresses ten specific documents that Plaintiffs have selected for *in camera* review to determine whether they may be withheld under the deliberative processes privilege. While the Court rules only on the selected documents, it is the Court's expectation that the reasoning set forth herein will be applied by the parties to resolve their dispute as to the remaining documents that are at issue.[1]

## II. BACKGROUND

In the Court's February 6, 2017 Order, it rejected Plaintiffs' argument that as a *general* matter, the deliberative processes privilege is unavailable in cases like this one involving a

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

challenge to agency action under Section 706(2) of the Administrative Procedures Act ("APA"). Instead, the Court found that such documents are subject to the balancing test set forth in *F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984), which sets forth various factors courts should considering in determining whether the need for disclosure of deliberative materials to allow for accurate fact-finding outweighs the government's interest in nondisclosure. The Court ordered Defendants to provide a more detailed description of the withheld documents in an amended privilege log ("Amended Privilege Log") and to identify which of the four categories identified in the November 15, 2016 Declaration of Gina M. Schultz ("Schultz Decl.") each document falls into.[2] *See* Schultz Decl. ¶ 6. Plaintiffs selected the following ten documents listed on the Amended Privilege Log for *in camera* review by the Court: PRIV000287 (Category IV), PRIV000289 (Category IV), PRIV000290 (Category IV), PRIV000293 (Category IV), PRIV000295 (Category IV), PRIV000964 (Category II), PRIV000966 (Category II), PRIV001110 (Category I), PRIV001590 (Category I), PRIV001771 (Category I). *See* Defendants' Notice Regarding Administrative Record-Related Submissions, Ex. 1 (Amended Privilege Log) & 3 (List of Withheld Documents According to Category).

## III. ANALYSIS

### A. Legal Standard[3]

The deliberative process privilege is a common law privilege, but "[f]ederal courts regularly apply FOIA precedent when interpreting the deliberative process privilege" because that privilege has been incorporated into FOIA in Exemption 5, which "permits nondisclosure of 'inter-agency or intra-agency memorandums or letters which would not be available by law to a

---

[2] The four categories described by Ms. Schultz are as follows: (1) discussions and deliberations of the core FWS and NMFS "SPR Team" . . . ; (2) FWS Regional Office comments on the Final SPR Policy (including FWS and NMFS Regional Offices), and internal FWS and NMFS discussions regarding the same; (3) interagency discussions arising out of the federal interagency review process coordinated by OMB for the Final SPR Policy; and (4) additional internal deliberative discussions amongst FWS, DOI, and/or NMFS employees (some of whom were not part of the SPR Team)." Schultz Decl., ¶ 6. The Court refers to these categories as "Category I," "Category II," "Category III," and "Category IV," respectively.

[3] This section is taken verbatim from the Court's February 6, 2017 Order and is provided here for the convenience of the reader.

2

party other than an agency in litigation with the agency.'" *Nw. Envtl. Advocates v. U.S. E.P.A.*, No. CIV 05-1876-HA, 2009 WL 349732, at *3 (D. Or. Feb. 11, 2009) (quoting 5 U.S.C. § 552(b)(5)). To qualify for protection under the deliberative process privilege, a document must be both (1) "predecisional," that is, "generated before to the adoption of agency's policy or decision" and (2) "deliberative," meaning that it contains opinions, recommendations or advice about agency policies. *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980)). The privilege does not cover "[p]urely factual material that does not reflect the deliberative process." *Id*. (citation omitted). On the other hand, the privilege applies where the "factual material is so interwoven with the deliberative material that it is not severable." *Id*. (citing *Binion v. Department of Justice*, 695 F.2d 1189, 1193 (9th Cir. 1983)).

In *Coastal States*, the court described the purposes of the deliberative process privilege as follows:

> The privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege is a qualified privilege. *Warner*, 742 F.2d at 1161. Thus, a party may obtain disclosure of deliberative materials if it can establish that the need for the materials to allow for accurate fact-finding outweighs the government's interest in non-disclosure. *Id*. (citing *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 658 (6th Cir.1976), *cert. denied*, 430 U.S. 945 (1977); *United States v. American Telephone and Telegraph Co.*, 524 F. Supp. 1381, 1386 n. 14 (D.D.C.1981)). The Ninth Circuit in *Warner* set forth four non-exclusive factors that may be considered in determining whether the litigant has met this requirement: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding

3

contemplated policies and decisions." *Id*. (citations omitted). "Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003).

### B. Whether the Withheld Documents are Deliberative[4]

The parties disagree on the question of whether these documents are "deliberative" in the first instance. Plaintiffs contend they are not, citing descriptions in the amended privilege log that they contend show that these documents do not reveal the mental processes of any decision-maker. Defendants argue that Plaintiffs construe the "deliberative" requirement too narrowly, improperly reading into it a requirement that the document must be linked to a particular decision-maker when the relevant question is instead whether the document is *part* of the deliberative process.[5] The Court agrees with the United States that a document may be deliberative even if it does not *directly* reveal the mental processes of a particular decision-maker.

"The key to the inquiry is whether revealing the information exposes the deliberative process." *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992), as amended on denial of reh'g (Sept. 17, 1992) (citation omitted). In *Assembly of State of California*, the court explained that typically, factual material is not deliberative whereas materials

---

[4] Plaintiffs do not dispute that all of the withheld documents are predecisional.

[5] The United States also argues that Plaintiffs have exceeded the scope of the supplemental briefing requested by the Court in raising this argument, construing the Court's February 6, 2017 Order as having already determined that all of the withheld documents are, in fact, deliberative. The government's conclusion is apparently based on the Court's finding that the applicability of the deliberative process privilege in this case should be addressed within the framework of the balancing test set forth in *Warner*. To the extent that courts do not apply that balancing test until *after* they have determined that the basic requirements of the privilege are met (including the requirement that they are deliberative), the United States apparently reasons that the Court has already decided that the documents that have been withheld in this case meet that requirement. The Court did not decide that question in its previous order, however. It simply ruled that *Warner* applies even in cases involving challenges to agency action under Section 702 of the APA. It left for another day the question of how the standards in that case apply to the specific documents that are the subject of the parties' dispute.

4

containing preliminary opinions are more likely to reveal the deliberative process. *Id*. at 921-922. Thus, in that case, the court of appeals upheld the district court's ruling that computer tapes containing statistically adjusted figures from the 1990 census were not "deliberative" and had to be produced. *Id*. at 922. Consistent with the Supreme Court's caution against the "wooden application" of the fact/opinion distinction, however, the court did not rule out the possibility that data of the sort contained on the tapes *might* be deliberative if it could be used to glean information about the judgment of the Secretary as to the proper approach to adjusting census data to reflect undercounting that had not already been disclosed. *Id*. (quoting *EPA v. Mink*, 410 U.S. 73, 93 (1972)). Instead, it found that under the facts of that case, "release of the adjusted block-level data would not enable the public to reconstruct any of the protected deliberative process." *Id*. at 923.

Similarly, in *Petroleum Info. Corp. v. U.S. Dep't of Interior*, also cited by Plaintiffs, the focus of the inquiry was whether factual material that had been withheld under the deliberative process privilege was "deliberative." 976 F.2d 1429 (D.C. Cir. 1992). Addressing this question, the court set forth the following standards for determining whether material is deliberative:

> To the extent that predecisional materials, even if "factual" in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5. Conversely, when material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable. S*ee Playboy Enterprises v. Department of Justice*, 677 F.2d 931, 935 (D.C.Cir.1982) (holding that fact report was not within privilege because compilers' mission was simply "to investigate the facts," and because report was not "intertwined with the policy-making process") (quoting district court); see also *Pacific Molasses Co. v. NLRB*, 577 F.2d 1172, 1183 (5th Cir.1978) (holding privilege inapplicable to "mechanically compiled statistical report which contains no subjective conclusions").

*Id*. at 1435. Applying that standard, the court went on to hold that records from a computer data bank containing information on public lands ("Legal Lands Description file" or "LLD" file) were not deliberative, rejecting the assertion by the Bureau of Land Management that the data was deliberative because it was provisional and might also reflect changes and revisions made by the agency to the publicly available information it had used create the LLD file. *Id*. at 1436.

5

Plaintiffs' reliance on these cases in support of their assertion that the selected documents in this case are not deliberative is not persuasive because the materials at issue here, as opposed to those at issue in the cases discussed above, contain the *opinions* of staff at FWS and NMFS (as well as staff from other agencies with a stake in the SPR Policy), about the pros and cons of the proposed policy. The Court therefore concludes that the ten documents selected by Plaintiffs for review are "deliberative" for the purposes of the deliberative processes privilege.

### C. Rulings on Documents

#### 1. Category I Documents (PRIV001110, PRIV001590, PRIV001771)

The United States describes Category I documents as "discussions and deliberations of the core FWS and NMFS 'SPR Team.'" Schultz Decl. ¶ 6. Schultz explains in her declaration:

> The SPR Team consisted of FWS and NMFS staff, as well as attorneys from DOI's Office of the Solicitor (primarily Ben Jesup, though other Office of the Solicitor attorneys also provided comment and insight) and NOAA's Office of General Counsel (primarily Ruth Ann Lowery, though other Office of General Counsel attorneys also provided comment and insight). These documents include pre-decisional briefing papers, recommendations, and other materials used by the SPR Team to generate candid discussion among the SPR Team members.

*Id.* ¶ 7. Based on its review of the three selected documents, along with the information contained in the Amended Privilege Log, the Court finds that PRIV001771 is subject to disclosure whereas PRIV001110 and PRIV001590 are not.

##### a. PRIV001110

According to the Amended Privilege Log, "[t]his document contains Bridget Fahey's opinions on the draft conceptual outline of the policy regarding whether a species can be endangered in an SPR and [threatened] throughout the range, the relevant case law, the threshold for significant, the relationship of DPS and SPR and the policy's application to other provisions of the Act." Dkt. No. 89-1 at 10. As the draft policy is already publicly available, *see* Dkt. No. 92 at 16, the dispute turns on whether the comments themselves are subject to the deliberative process privilege. The Court concludes that they are.

This document has some relevance to the issues in this case. Plaintiffs claim that the adoption of the Final SPR Policy was arbitrary, capricious, or otherwise not in accordance with

law under Section 706(2) of the APA. As the Court discussed in its previous order, a particularly significant issue raised by Plaintiffs' claim is whether the agency action "properly flowed from the evidentiary record" before the agency and/or whether there was information before the relevant decision-makers that rendered the agency action arbitrary and capricious. February 6, 2017 Order at 21. The thoughts of a member of the core SPR Team about specific aspects of the proposed agency action could shed light on this question and there is no doubt that Fahey's comments, including those addressing implementation issues associated with the draft, are informed by her knowledge of specific facts of which she was aware by virtue of her position at FWS. At the same time, the Court notes that her comments do not expressly refer to specific facts or evidence, such as examples that relate to the likely impact of the policy on specific species, or past experience regarding specific species that might have implications for the agency's decision. Therefore, the relevance factor points in favor of disclosure, but not as strongly as it would if the content of Fahey's comments contained specific evidentiary grounds for her opinions.

The second factor is availability of the same information in other documents that have already been disclosed. While Defendants cite to documents in the Federal Register that address some of the general issues raised by Fahey in her comments, the information that is *unavailable* in those documents is what Fahey's position was on those issues. According to her declaration, Fahey holds an important position at FWS and in that capacity is involved in "policy development related to implementation of section 4 of the ESA." Dkt. No. 89-2 (Fahey Decl.) ¶ 1. To the extent that Defendants have placed this document in Category I, the Court also infers that Fahey was a member of the core SPR Team. Given her position at FWS and her role in the process, Fahey's positions on certain specific issues related to the draft policy is potentially significant information that cannot be gleaned from the Federal Register citations offered by Defendants.

It is for this same reason, however, that the fourth *Warner* factor – the likelihood of chilling – points away from disclosure. As a member of the core SPR Team *and* someone who was responsible for policy development, Fahey's comments are likely to reveal the mental processes of those who actually made the decision to adopt the Final SPR Policy. As such, disclosure of these comments, which are phrased informally and on occasion highlight potential

7

1 problems with the policy, poses a significant threat to the ability of decision-makers to have frank and candid conversations about important policy matters.

Turning to the third *Warner* factor, the Court also finds that the government plays a central role in this litigation and as such, this factor points towards disclosure. There is no evidence in the record, however, that the challenged agency action involved affirmative misconduct or bad faith. Nor do the comments in this specific document provide evidence of such. As a consequence, this factor does not favor disclosure as strongly as it otherwise might. The Court notes that in reaching this conclusion, it relied not only on the government's representation that none of the documents that were withheld reflects that the government acted in bad faith or relied on improper factors. The Court also conducted its own review of a random sample of the withheld documents, which were filed with the Court under seal. Among the documents it reviewed, the Court found no evidence of misconduct or bad faith on the part of those involved in the decision making process (or any other staff).

Considering these factors together, the Court concludes that the possibility of chilling outweighs Plaintiffs' need for disclosure. Of particular significance to the Court is the fact that: 1) Fahey was a core SPR Team member and an individual who was involved in the development of ESA policy; 2) the comments do not call out specific facts or evidence relating to particular species that might have implications for the reasonableness of the ultimate decision; 3) the Court has not found evidence of misconduct or bad faith in the documents it has reviewed (including this document) and the government represents that the documents do not reveal any.

b. PRIV001590

The Amended Privilege Log describes this document as follows: "This email chain relays Kit Hershey's comments re proposed conceptual outline of SPR policy. It provides her personal views on the complexity of the policy as described in the outline. Her comments respond to an email Kelly Hornaday (HQ) sent all regions and DOI SOL seeking input on the conceptual outline of the SPR Policy." Dkt. No. 89-1 at 16. Defendants produced this email chain in document number SPR079678 but redacted three paragraphs from Kelly Hornaday's December 10, 2010 11:05 A.M. email. The dispute therefore relates only to these three paragraphs.

In the redacted portion of this document, Hornaday seeks input from all regional offices regarding the SPR Policy, highlighting specific areas of concern. The document is relevant to whether the agency acted reasonably in adopting the SPR Policy because it reflects on the adequacy of efforts made by decision makers to obtain information from staff at the regional offices relating to issues of implementation. On the other hand, the material in the redacted portion of the email does not address specific examples or species and therefore does not shed light on the question of whether decision-makers considered (or ignored) any particular facts or evidence before them that would have implications for Plaintiffs' claim. Therefore, the relevance factor points towards disclosure, but not strongly.

The citations to the Federal Register do not establish that this information is available elsewhere because they only touch on the subject matter of the issues discussed and do not provide information about the types of information requested from regional offices by the specific decision-maker who authored this document. Therefore, this factor also supports disclosure.

The government's role as the focus of the litigation also supports disclosure, though the absence of evidence of misconduct or bad faith diminishes the significance of this factor somewhat, as discussed above. The Court further finds that because Hornaday is a member of the core SPR Team and the redacted material appears to convey a general request from decision makers in Washington for input on specific topics related to the SPR Policy, the issues raised in her email are likely to reveal the mental processes of decision-makers. At the same time, the danger of chilling a request for input from staff that involves candid acknowledgment of potential shortcomings of the policy is significant.

Weighing these factors, the Court concludes that the Plaintiffs' need for this document does not outweigh the concerns underlying the deliberative process privilege and therefore, that the document may be withheld.

### c. PRIV001771

According to the Amended Privilege Log, "[t]his email relays questions regarding draft policy from Beth Forbus, Listing Biologist, Region 8, and staff in Carlsbad to . . . HQ to Douglas Krofta, Ecological Services Listing Branch Chief, HQ, to be addressed on webinar for staff as part

of an ongoing deliberative process among a team that included attorneys and nonattorneys working on development of the SPR policy. Douglas Krofta then forwarded the questions/ comments to Kelly Hornaday for consideration by the SPR Team. The comments and questions are related to the history and background of SPR, expectations for the final policy, the threshold established by the draft policy, and the standard for 'significant.'"

Like PRIV001590, this document is relevant because it sheds some light on the types of concerns raised by staff in regional offices about the SPR Policy. Unlike PRIV001590, the document was not sent from Washington to all of the regional offices and does not appear to directly reflect the concerns of decision-makers involved in policy development. As a consequence, disclosure of this document is unlikely to reveal the mental processes of decision-makers. Moreover, the Court finds little danger of chilling as the document contains only a fairly generic set of questions. The Court also finds that the information contained in the document is not available in the documents cited by Defendants for the same reasons discussed above. The Court concludes that this document is subject to disclosure in light of the general rule that the deliberative process privilege "'must be strictly confined within the narrowest possible limits consistent with the logic of its principles.'" *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009) (quoting *K.L. v. Edgar*, 964 F.Supp. 1206, 1208 (N.D.Ill.1997)).

**2. Category II Documents (PRIV000964, PRIV000966)**

Category II consists of "FWS Regional Office comments on the Final SPR Policy (including FWS and NMFS Regional Offices), and internal FWS and NMFS discussions regarding the same." Dkt. No. 60-2 at 2.

a. PRIV000964

According to Defendants, this document "contains Rollie White's comments regarding the draft conceptual outline for the SPR policy. It provides his personal opinions regarding the consequences of finding a species endangered or threatened in a SPR, the definition of significant and the relationship of DPS and SPR. His comments respond to an email Kelly Hornaday (HQ) sent all regions and DOI SOL, as forwarded to Kit Hershey, Acting Endangered Species Program

Manager in R1, seeking input on the conceptual outline of the SPR Policy." Dkt. No. 89-1 at 7. Rollie White is a Region 1 division manager.

These comments are relevant to the possible listing implications of the SPR Policy and explicitly address the likely *practical* implications of certain aspects of the policy with respect to implementation. Given that the author of the document is from a regional office and therefore likely has significant practical experience in the area of listing decisions, the comments he offers may also shed significant light on whether the ultimate decision in adopting the Final SPR Policy was based on the evidentiary record and the opinions of the agency's own experts in the field. While the United States contends the same subject matter is addressed elsewhere, the information that is missing from the cited materials is what opinions this individual, who has specific practical experience related to species listings, presented to the decision-makers who ultimately adopted the SPR Policy. Therefore, the relevance factor strongly favors disclosure of this document. Similarly, as the reasonableness of the agency's decision in adopting the SPR Policy is the focal point of the litigation, the government's role in the litigation also supports disclosure.

With respect to the likelihood of chilling, the comments here differ from the ones in PRIV001110, by Fahey, because Rollie White apparently is not a member of the SPR Team; even if he is, there is no evidence in the record that he is responsible for the development of ESA policy, in contrast to Fahey. As a consequence, disclosure of his comments is less likely to implicate the mental processes of a decision-maker. Furthermore, the Court finds that there is a diminished likelihood of chilling when comments are offered from a regional FWS or NMFS staff member in response to an official request for comment from Washington. Under these circumstances, and in light of the DOI and FWS policies regarding compilation of the administrative record, a regional staff member would likely expect that his or her comments would be part of a public record. Moreover, there is nothing about these comments that suggests that their disclosure would cause embarrassment on the part of the author or give rise to confusion on the part of the public. Rather, the comments are professionally stated and substantive. Consequently, the Court concludes that disclosure of this document is unlikely to hinder frank and candid discussions. *See Arizona Dream Act Coalition v. Brewer,* No. CV-12-02546-PHX-DGC,

2014 WL 171923, at *3 (D. Ariz. Jan. 15, 2014); Fish & Wildlife Service Manual, "Records Management," 282 FW 5.4, 5.8 (Mar. 2, 2007) (instructing that "[a]ll records that people involved in [a] decision[] used or that were available to them when they were making [a] decision" should be included in the administrative record); DOI, Standard Guidance on Compiling a Decision File and an Administrative Record 7 (June 27, 2006) ("all supporting documents" are "typically disclosed," including "[c]ommunications and other information received from the public and other agencies" and "[e]lectronic communications or other internal communications, such as emails and their attachments, which contain factual information, substantive analysis or discussion, or that document the decision-making process").

Weighing these factors, the Court concludes that the Plaintiffs' need for this document outweighs the considerations relating to the deliberative process and therefore, that the document is subject to disclosure.

### b. PRIV000966

The Amended Privilege Log states that "[t]his email relays questions and/or comments from Seth Willey (R6) regarding the role of recovery in the draft policy outline and interpretation of 'SPR' as part of an ongoing deliberative process among a team that included attorneys and nonattorneys working on development of the SPR policy."[6] Dkt. No. 89-1 at 7. This document is relevant because it reflects the concerns of a staff member from a regional office about the SPR Policy and also cites a specific example related to a species in that region to illustrate the concern. Although the example is not related to the species at issue in this case, it is nonetheless relevant to the main issue raised by Plaintiffs in this action, namely, whether the final agency decision was arbitrary and capricious in light of the record. Thus, the relevance factor strongly supports the disclosure of this document.

Further, as discussed above, to the extent that the materials in the Federal Register cited only address the same general subject matter and do not reveal the positions of staff in particular

---

[6] Notwithstanding the reference to attorneys in the Amended Privilege Log, Defendants do not assert attorney-client privilege as to this document.

12

regions on that subject matter, the information contained in this document is not available elsewhere. Given that the government's ultimate decision is the focal point of this case, the government's role in the litigation also favors disclosure.

Finally, the Court concludes that disclosure of this document is not likely to lead to the chilling of candid discussions within the agency. The record does not reflect that Willey holds a high-level position involving the development of ESA policy. Further, while the email is admittedly informal, there is nothing in it that would cause embarrassment on the part of the author or the agency or give rise to confusion on the part of the public. Moreover, the agency policy regarding the compilation of the administrative record does not exclude emails and the author likely would have expected that this communication would be part of the administrative record.

Weighing these factors, the Court concludes Plaintiffs' need for this document outweighs the concerns underlying the deliberative process and therefore, that this document is subject to disclosure.

### 3. Category IV Documents (PRIV000287, PRIV000289, PRIV000290, PRIV000293, PRIV000295)

a. PRIV000287

In the Amended Privilege Log, Defendants describe this document as follows:

> This document contains 8 sets of comments from unnamed staff in Region 8 on the proposed SPR Policy. The first set of comments provides staff opinions on applying the policy to species and the relationship of DPS to SPR. The second set of comments provides staff opinions on consequences of being endangered or threatened in a SPR, the biological basis for "significant" and the threshold for "significant," the interpretation of " range," and the policy's directive to list the DPS, where it is also a SPR. The third set of comments provides staff opinions on the definition of "significant." The fourth set of comments provides staff opinions on implementation of the policy, the definition of "significant," the interpretation of "range," and the need for training. The fifth set of comments provides staff opinions regarding the threshold for "significant," the biological basis for "significant," and the relationship of DPS and SPR. The sixth set of comments provides staff opinions on the relationship of DPS and SPR, the definition of "significant" and process for applying it; the threshold, the role of significant in DPS and SPR, application of the policy, and interpretation of "range." The seventh set of comments provides staff opinions on the consequences of being endangered or

> threatened in a SPR, implementation of the policy, and the role of historical range. The eighth set of comments provides staff opinions on the definition of "significant" and the concept of being endangered or threatened in a SPR, characterization of "portions," whether a species can be endangered in a SPR of its range and threatened throughout, and implementation. The comments provide staff's candid thoughts and personal opinions on, inter alia, the definition of "significant," the threshold for "significant," the relationship of SPR to DPS, and the interpretation of range.

Dkt. No. 89-1 at 1.

This document is highly relevant to the Plaintiffs' claim. It is a compendium of substantive comments by staff in Region 8 and expressly addresses issues related to implementation of the policy that were before the decision makers who adopted the final policy. This sort of information is crucial to making a determination as to whether the final agency action complies with Section 706(2) of the APA. Further, for the same reasons discussed above, this information is not available in the material cited by Defendants; moreover, the role of the government in this case supports disclosure of this document as well. Finally, the comments in this document do not directly reveal the mental processes of any decision maker. Instead, they reveal the thoughtful comments of the agency's "experts" in a regional office. Given the policies of FWS and NMFS as to the contents of the administrative record, discussed above, these individuals likely would have (or should have) expected that their comments would be included in the administrative record. Therefore, the disclosure of these comments is not likely to give rise to any significant chilling effect.

Weighing the factors discussed above, the Court concludes that Plaintiffs' need for this document outweighs the considerations that underlie the deliberative process privilege and therefore, that this document is subject to disclosure.

### b. PRIV000289

According to the Amended Privilege Log:

> In this email chain, TJ Miller relays Region 3 comments on the proposed SPR policy to Rick Sayers at HQ, cc'ing R3 Assistant regional Director for Ecological Services, Lynn Lewis, Jessica Hogrefe (R3) and Laura Ragan (R3). Jessica Hogrefe (R3) then relays these comments on the proposed SPR policy to Kelly Hornaday at HQ, cc'ing TJ Miller (R3) and Laura Ragan (R3) on the transmission. These comments include opinions and questions

14

regarding the relationship of DPS and SPR and whether a species can be both threatened throughout its range and endangered in a SPR. The comments launch pre-decisional and deliberative discussion among FWS, NMFS, DOI SOL and NOAA GC regarding the draft policy.

Dkt. No. 89-1 at 2. The Court's conclusions as to this document are the same as for PRIV000287. This document is subject to disclosure.

### c. PRIV000290

This document is described as follows on the amended privilege log:

> This memorandum contains comments on the proposed policy from Region 6 Deputy Regional Director, Noreen Walsh. These comments include Region 6 opinions on issues related to the appropriateness of listing the entire species when threatened or endangered in a SPR, implications for recovery, and application of the policy to other sections of the Act/policies. The memorandum includes an attachment with comments from Chris Servheen, Grizzly Bear Recovery Coordinator and Scott Larson, South Dakota FO Supervisor. Those comments provide candid personal opinions regarding, inter alia, the definition of "significant," the definitions relationship to the clarification approach, legislative history and implications of listing the entire species when found endangered or threatened in a SPR.

Dkt. No. 89-1 at 2. The Court's conclusions as to this document are the same as for PRIV000287 and PRIV 000289. This document is subject to disclosure.

### d. PRIV00293

In the Amended Privilege Log, Defendants describe this document as follows:

> This memorandum and attachment contain comments on the proposed SPR policy from NMFS Southwest Region, including comments on the issues identified in the "Public Comments: Request for Information" section of the Federal Register notice to inform the Services' predecisional discussions. The document provides this region's opinions and comments related to issues regarding implementation of the policy, the policy's application to other provisions of the Act, how the agencies address uncertainty in extinction risk analysis/listing decisions, the consequences of being endangered or threatened in a SPR, the definition of "significant," including the biological basis for significant and the threshold for significant, taking a quantitative approach, the role of historical range and the relationship between DPS and SPR. These comments launch pre-decisional and deliberative discussion among FWS, NMFS, DOI SOL and NOAA GC regarding the draft policy.

Dkt. No. 89-1 at 3. The Court's conclusions as to this document are the same as for PRIV000287, PRIV000289 and PRIV000290. This document is subject to disclosure.

15

e. PRIV000295

According to the Amended Privilege Log:

> This document contains comments on the proposed SPR policy from Robin Waples (NWFSC), Barb Taylor (SWFSC) on 2/1/12, Donna Darm (NWR), Mike Ford (NWFSC), and Barb Taylor on 2/24/12. These comments provide staff's candid opinions and comments on issues regarding, inter alia, application of the policy to current listings, consequences of finding a species endangered or threatened in a SPR, the threshold for significant, the relationship of SPR and DPS, approach of listing the entire species, consideration of historical range, and the biological basis for significant. These comments and opinions launch pre-decisional and deliberative discussion among FWS, NMFS, DOI SOL and NOAA GC regarding the draft policy.

Dkt. No. 89-1 at 4. These comments from individuals with a stake in the policy are similar to those of the regional staff contained in the documents discussed above and are highly relevant to Plaintiffs' claim under 706(2) of the APA because they reflect the concerns that were expressed to decision makers about the SPR Policy by those with expertise in the implementation of the Endangered Species Act. The Court's conclusions about the application of the remaining *Warner* factors to this document are also similar to the ones it reached as to the regional office comments. In particular, the information revealed in this document is not available in the materials cited by Defendants and the government's role in this case favors disclosure. Finally, the comments are substantive and professional and are the sort that presumptively would be included in an administrative record. As such, their disclosure is unlikely to give rise to the chilling of frank and candid discussions between the agencies.

Weighing these factors, the Court finds that this document is subject to disclosure.

**IV. CONCLUSION**

For the reasons discussed above, Defendants may withhold PRIV001110 and PRIV001590 on the basis of the deliberative process privilege. As to the remaining documents selected by Plaintiffs, the Court concludes that Plaintiffs' need for these documents outweighs Defendants' need to protect the deliberative process and therefore, that these documents must be produced. The Court DENIES without prejudice Defendants' request for a protective order, which was mentioned in passing in a footnote in its Opposition brief. The Court notes that to the extent that Plaintiffs

challenge a policy that has important implications for the implementation of the Endangered Species Act generally, there is a strong public interest in making a complete record available to the public and not just to the litigants in this case. On the other hand, the United States has not demonstrated that disclosure of the documents at issue is likely to result in "particularized" harm. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). Therefore, the United States is likely to bear a heavy burden if it seeks to pursue its request for a protective order as to the documents that are subject to disclosure under this Order.

Within thirty (30) days of the date of this Order, the United States shall produce to Plaintiffs any of the disputed documents it concludes are subject to disclosure under the reasoning of this Order (including those specifically addressed in this Order), along with a privilege log listing the basis for withholding any of the remaining disputed documents as to which it contends the deliberative process privilege applies. The parties shall meet and confer as to any remaining disputes related to these documents within forty-five (45) days and provide to the Court a status report as to the production of the disputed documents within sixty (60) days. In their status report, the parties shall propose dates for the remainder of the case. A Further Case Management Conference is set for **June 30, 2017 at 2:00 p.m.**

**IT IS SO ORDERED.**

Dated: May 1, 2017

JOSEPH C. SPERO
Chief Magistrate Judge