UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DESERT SURVIVORS, et al.,

    Plaintiffs,

v.

US DEPARTMENT OF THE INTERIOR, et al.,

    Defendants.

Case No. 16-cv-01165-JCS

**REMEDY ORDER**

## I. INTRODUCTION

In this case, Plaintiffs Desert Survivors, Center for Biological Diversity, WildEarth Guardians, and Western Watersheds Project challenged: 1) the decision of the U.S. Fish and Wildlife Service to withdraw the proposed listing of the Bi-State Sage-Grouse as "threatened" under the Endangered Species Act (the "Withdrawal Decision"); and 2) the Service's "Final Policy on Interpretation of the Phrase 'Significant Portion of its Range' in the Endangered Species Act" (the "SPR Policy"). On May 15, 2018, the Court issued an order granting Plaintiffs' summary judgment motion and denying Defendants' summary judgment motions. In response to the Court's request, the parties have provided briefing on the appropriate remedy in light of the Court's rulings. The Court's ruling on remedies is set forth below.[1]

## II. WITHDRAWAL DECISION REMEDY

Judicial review of agency action under the Endangered Species Act is governed by the "arbitrary or capricious" standard set forth in the Administrative Procedures Act ("APA"), which provides that "a reviewing court shall . . . hold unlawful and set aside agency action, findings, and

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In its summary judgment order, the Court concluded that the Service's Withdrawal Decision was arbitrary and capricious under the APA and unsupported by the record. Therefore, as the parties have agreed, the appropriate remedy is to vacate the Withdrawal Decision and remand with directions to the United States Fish and Wildlife Service ("FWS") to issue a new final listing decision. The parties also agree that the proposed rule to list the Bi-State DPS that was the subject of the Withdrawal Decision should be reinstated. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."). Finally, the parties have agreed on certain requirements regarding the timing of the actions required of FWS upon remand, which the Court finds to be reasonable.

Therefore, with respect to the Withdrawal Decision, the Court ORDERS as follows:

1) The Withdrawal of the Proposed Rule to List the Bi-State Distinct Population Segment of Greater Sage-Grouse and Designate Critical Habitat ("Withdrawal Decision"), published at 80 Fed. Reg. 22,828 (Apr. 23, 2015), is HEREBY VACATED and set aside;

2) The prior proposal to list the Bi-State Sage-Grouse as a threatened species and to designate critical habitat, published at 78 Fed. Reg. 64,328 (Oct. 28, 2013) ("Proposed Listing"), is HEREBY REINSTATED;

3) Federal Defendants shall provide a new opportunity for public comment on the Proposed Listing and shall prepare and publish in the Federal Register a new and final listing determination on the proposed rule by **October 1, 2019**;

4) If the Federal Defendants make a finding that additional time is needed because there is "substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination" and submit that finding to the Court by October 1, 2019, then the time for Federal Defendants to prepare and publish in the Federal Register a final listing determination on the proposed rule shall be extended to April 1, 2020.

### III. SPR POLICY REMEDY

In its summary judgment order, the Court concluded that the definition of "significant" in the SPR Policy is an impermissible interpretation of the "significant portion of its range" language in the Endangered Species Act. The parties agree that some sort of vacatur of the SPR Policy is an appropriate remedy, and both sides agree that any vacatur of the SPR Policy should be limited to the definition of "significant" that the Court found to be impermissible. Defendants, however, contend the Court should limit the vacatur order to the particular geographical region in which Plaintiffs' injury occurred, namely, the District of Nevada and the Eastern District of California, where the Bi-State DPS is found. Plaintiffs contend there should be no such limitation. The Court concludes that Plaintiffs are correct.

As a preliminary matter, the Court notes that in "rare circumstances," an invalid rule may be left in place without vacatur on the basis of equity concerns. *Ctr. for Envtl. Health v. Vilsack*, No. 15-CV-01690-JSC, 2016 WL 3383954, at *10 (N.D. Cal. June 20, 2016) (citing *Pollinator Stewardship Council v. U.S. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015) (Courts "leave an invalid rule in place only when equity demands that we do so.")). "To determine whether to make an exception to the usual remedy of vacatur, the Court considers two factors: (1) 'how serious the agency's errors are,' and (2) 'the disruptive consequences of an interim change that may itself be changed.'" *State v. United States Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1125 (N.D. Cal. 2017), appeal dismissed sub nom. *State by & through Becerra v. United States Bureau of Land Mgmt.*, No. 17-17456, 2018 WL 2735410 (9th Cir. Mar. 15, 2018) (citing *Cal. Cmtys. Against Toxics v. Envtl. Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Defendants do not invoke this exception, however, in support of their request for a geographical limitation on the Court's vacatur order.

Instead, Defendants point to the Ninth Circuit's admonition in *Los Angeles Havens Hospice, Inc. v. Sebelius*, that a remedy should be "no more burdensome . . . than necessary to provide complete relief to the plaintiffs." 638 F.3d 644, 664 (9th Cir. 2011). According to Defendants, because the injury Plaintiffs suffered occurred only in the Bi-State DPS, a remedy that

3

extends only to that geographical region is all that is needed or appropriate to afford sufficient relief. They further assert that under *Los Angeles Havens Hospice,* a geographically limited vacatur order is preferable to nationwide vacatur because other courts will have the opportunity to address a difficult issue in different factual contexts, resulting in multiple decisions by various courts of appeals. 638 F.3d at 664.

Defendants also suggest that a geographical limitation is required under *Lujan v. National Wildlife Federation*, 497 U.S. 871, 873 (1990) and the rules governing Article III standing. They point out that in *Center for Biological Diversity v. Jewell* ("*CBD I*"), Case No. 14-2506 (District of Arizona), Judge Marquez amended her order vacating the SPR Policy on the basis that the plaintiffs in that case had established Article III standing only "with respect to the Final Pygmy Owl Finding and the Final SPR Policy as applied in the District of Arizona" and not "to challenge the Final SPR Policy nationwide." Case No. 14-2506, Docket No. 81 (citing *Lujan v. Nat'l Wildife Fed'n*, 497 U.S. 871, 891 (1990)).

The Court is not persuaded that an order partially vacating the SPR Policy – without a geographic limitation – violates the principle set forth in *Los Angeles Havens Hospice* or the rules that govern Article III standing. First, the remedy requested by the plaintiffs in *Los Angeles Havens Hospice* went beyond asking the court to vacate the challenged regulation. In that case, a hospice provider brought a facial challenge to a regulation imposing an aggregate cap on Medicare payments to hospice providers. 638 F.3d at 665. The court found that the hospice provider, which had received an overpayment demand from the Department of Health and Human Services that was based on the hospice cap regulation, had standing to challenge the regulation, both on its face and as applied. *Id*. at 653. It further found that the regulation was inconsistent with the applicable hospice cap statute under which it was promulgated. *Id*. The judgment entered by the district court did "not only invalidate[ ] the 2006 overpayment demand and the hospice cap regulation," however. *Id*. It "also stated that 'HHS is hereby enjoined prospectively from using the current [version of] 42 C.F.R. § 418.309(b)(1) to calculate hospice cap liability for *any* hospice.'" *Id*. (emphasis in original). It was this injunctive relief that the court found to be unduly burdensome, concluding that the district court abused its discretion but stopping short of finding

4

that the nationwide injunction was "in excess of its jurisdiction." *Id*. at 661. In reaching this conclusion, the Court of Appeals relied on the district court's own finding that "a nationwide injunction would not be in the public interest because it would significantly disrupt the administration of the Medicare program by inhibiting HHS from enforcing the statutorily mandated hospice cap as to over 3,000 hospice providers, and would create great uncertainty for the government, Medicare contractors, and the hospice providers." *Id*.

In contrast to *Los Angeles Havens Hospice*, Plaintiffs here have not asked for a nationwide injunction. Nor have Defendants pointed to evidence that an order vacating one aspect of the SPR Policy will lead to the sort of disruption that was likely to result from a nationwide injunction in *Los Angeles Havens Hospice*. Indeed, it is not clear that the geographical limitation proposed by Defendants would not itself be a source of confusion given that Plaintiffs have identified a number of species whose habitats include the Eastern District of California and/or the District of Nevada and also other districts where the definition of "significant" under the SPR Policy would remain in effect under Defendants' proposal. Moreover, nothing in *Los Angeles Havens Hospice* suggests that the court would have abused its discretion if it had merely vacated the challenged regulation, as Plaintiffs request here. To the contrary, the court in that case made clear that "[a]n order declaring the hospice cap regulation invalid, enjoining further enforcement against Haven Hospice, and requiring the Secretary to recalculate its liability in conformity with the hospice cap statute, would have afforded the plaintiff complete relief." *Id*.

Further, the Court is not persuaded that the possible benefit of multiple decisions by courts of appeals addressing different fact patterns justifies limiting the scope of the vacatur geographically. The Court found that the SPR Policy is deficient as a *matter of law*, meaning that it cannot be reconciled with any set of facts. Further, to the extent that the Court has found that the definition of "significant" is inconsistent with the Endangered Species Act, any possible benefit that might arise from multiple decisions addressing the lawfulness of the policy is outweighed by the fact that application of the policy could prevent species from being afforded the protection the ESA was intended by Congress to afford them. *See Nw. Envtl. Advocates v. U.S. E.P.A*, No. C 03-05760 SI, 2006 WL 2669042, at *10 (N.D. Cal. Sept. 18, 2006), *aff'd sub nom.*

5

*Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006 (9th Cir. 2008) ("In considering which of the parties' positions most closely approximates the proper remedy in this case, the Court is primarily guided by one factor: the EPA regulation is plainly contrary to the congressional intent embodied in the Clean Water Act.").

The Court also rejects Defendants' argument that the Court should place a geographical limitation on the vacatur of the SPR Policy on the basis of Article III standing. Courts have "made clear that '[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.'" *Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)(quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 21 (D.C.Cir.1989)). The court in in *National Mining Association* pointed to the following passage in Justice Blackmun's dissent in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), which "apparently express[ed] the view of all nine Justices on this question:"

> The Administrative Procedure Act permits suit to be brought by any person "adversely affected or aggrieved by agency action." In some cases the "agency action" will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain "programmatic" relief that affects the rights of parties not before the court. On the other hand, if a generally lawful policy is applied in an illegal manner on a particular occasion, one who is injured is not thereby entitled to challenge other applications of the rule.

145 F.3d at 1409 (quoting *Lujan*, 497 U.S. at 913)(Blackmun, J., dissenting) (citation omitted).

Likewise, the majority in *Lujan* – while finding that there had been no final agency action that had subjected the plaintiff to concrete harm and thus, that the plaintiff's claims were not ripe for review under Article III – recognized that if there *had* been some final agency action that was ripe for review, an individual who was adversely affected by the action could seek a remedy that went beyond the individual's injury. 497 U.S. at 890 n. 2. In particular, Justice Scalia stated:

> If there is in fact some specific order or regulation, applying some particular measure across the board to all individual classification terminations and withdrawal revocations, and if that order or regulation is final, and has become ripe for review in the manner we discuss subsequently in text, it can of course be challenged under the

> APA by a person adversely affected-and the entire "land withdrawal review program," insofar as the content of that particular action is concerned, would thereby be affected.

*Id*. The Court found in its summary judgment order that Plaintiffs' challenge to the definition of "significant" under the SPR Policy is ripe for review. Accordingly, *Lujan* supports the conclusion that Plaintiffs have standing under Article III to seek vacatur of the SPR Policy without a geographical limitation.[2]

For these reasons, the Court vacates and sets aside the "significant portion" part of the SPR Policy that it found to be unlawful in its summary judgment order.

**IT IS SO ORDERED.**

Dated: August 24, 2018

JOSEPH C. SPERO
Chief Magistrate Judge

---

[2] The Court respectfully declines to follow the decision in *CBD I* limiting the vacatur order in that case to the District of Arizona. Although the court in *CBD I* cited *Lujan* for the proposition that a regulation is not ripe for review under the APA until there has been some concrete action applying to the claimant's situation, the court did not explain how that language supported the conclusion that the plaintiffs in that case – who *had* been subject to concrete agency action and were bringing a facial challenge to the SPR Policy based on the harm that they suffered from that concrete action – lacked standing to seek vacatur beyond the geographical area where they suffered injury. As discussed above, *Lujan* recognizes that a successful facial challenge to a regulation may result in its invalidation even if that remedy affects nonparties. The Court finds nothing in *Lujan* that suggests that a party who brings a facial challenge based on a concrete injury has standing only as to the geographical area where the injury occurred. The only other case Defendants cite in which vacatur was geographically limited is *Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 108 (D.D.C. 2004). In that case, however, the court limited the scope of the vacatur simply because the parties had agreed to do so and did not discuss any of the issues raised by the parties here as to the scope of the vacatur.

7